UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | | |
|---|---|---|
| In re HOME POINT CAPITAL INC. SECURITIES LITIGATION | ) ) ) | Civ. No. 4:21-cv-11457-SDK-KGA |
| | | Judge Shalina D. Kumar<br>Magistrate Judge Kimberly G. Altman |
| | | CLASS ACTION |
| | | LEAD PLAINTIFF'S UNOPPOSED MOTION FOR (I) PRELIMINARY APPROVAL OF SETTLEMENT, (II) CLASS CERTIFICATION, AND (III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS |

Lead Plaintiff Abdulaziz Jamal Johar Al-Johar respectfully moves the Court to enter an Order: (i) preliminarily approving the Settlement set forth in the Stipulation of Settlement; (ii) approving the form and manner of providing notice of the Settlement to the Settlement Class; (iii) preliminarily granting class certification for settlement purposes; and (iv) setting a hearing date at which the Court will consider final approval of the Settlement, approval of the Plan of Allocation, Lead Counsel's application for attorneys' fees and expenses, and an award to Lead Plaintiff.

In support of the motion, Lead Plaintiff relies on the accompanying Memorandum of Law and the Stipulation of Settlement and exhibits thereto.  A proposed order is also submitted herewith.

DATED:  September 15, 2023               Respectfully submitted,

ROBBINS GELLER RUDMAN
 & DOWD LLP
ELLEN GUSIKOFF STEWART
DANIELLE S. MYERS
JUAN CARLOS SANCHEZ


                              s/ Ellen Gusikoff Stewart
                        ELLEN GUSIKOFF STEWART

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
elleng@rgrdlaw.com
dmyers@rgrdlaw.com
jsanchez@rgrdlaw.com

- 1 -

ROBBINS GELLER RUDMAN
     & DOWD LLP
CHAD JOHNSON
JONATHAN ZWEIG
ANA AVALOS CUELLAR
420 Lexington Avenue, Suite 1832
New York, NY  10170
Telephone:  212/432-5100
chadj@rgrdlaw.com
jzweig@rgrdlaw.com
aavalos@rgrdlaw.com

Lead Counsel for Lead Plaintiff and the
Class

VANOVERBEKE, MICHAUD &
     TIMMONY, P.C.
THOMAS C. MICHAUD (P42641)
FRANCIS E. JUDD (P68857)
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
tmichaud@vmtlaw.com
fjudd@vmtlaw.com

Local Counsel for Lead Plaintiff and the
Class

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | | |
|---|---|---|
| In re HOME POINT CAPITAL INC. SECURITIES LITIGATION | ) ) ) | Civ. No. 4:21-cv-11457-SDK-KGA |
| | | Judge Shalina D. Kumar<br>Magistrate Judge Kimberly G. Altman |
| | | CLASS ACTION |
| | | LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR (I) PRELIMINARY APPROVAL OF SETTLEMENT, (II) CLASS CERTIFICATION, AND (III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS |

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ...................................................................................2

II.  THE TERMS OF THE SETTLEMENT ...............................................3

III. THE PROPOSED SETTLEMENT MERITS PRELIMINARY
     APPROVAL .........................................................................................6

     A.   Lead Plaintiff and Lead Counsel Have Adequately Represented
          the Settlement Class .................................................................8

     B.   The Settlement Is the Result of a Thorough, Rigorous and
          Arm's-Length Negotiation Process...........................................10

     C.   The Settlement Also Satisfies Rule 23(e)(2)(C)'s Adequacy
          Criteria.....................................................................................11

          1.   The Settlement Is Adequate in Light of the Costs, Risks,
               and Delay of Trial and Appeal.........................................11

          2.   The Method of Distributing Relief Is Effective.........................14

          3.   Attorneys' Fees and Expenses .................................................15

          4.   Identification of Agreements ....................................................17

     D.   Settlement Class Members Are Treated Equitably .............................17

     E.   The Judgment of Experienced Trial Counsel.......................................18

     F.   The Sixth Circuit's Public Interest Factor Is Satisfied........................19

IV.  THE PROPOSED NOTICE PROGRAM IS APPROPRIATE....................20

V.   THE COURT SHOULD PRELIMINARILY CERTIFY THE
     SETTLEMENT CLASS .......................................................................22

     A.   The Settlement Class Meets the Requirements of Rule 23(a) ...........23

          1.   Numerosity.................................................................................23

          2.   Commonality..............................................................................24

**Page**

3. Typicality ...................................................................25

4. Adequacy of Class Representatives ..........................................26

B. The Settlement Class Meets the Requirements of Rule 23(b) ............28

VI. PROPOSED SCHEDULE OF EVENTS .......................................................32

VII. CONCLUSION ...............................................................................33

4888-5104-3188.v2

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997)......................................................................29, 31

*Beach v. Healthways, Inc.,*
2010 WL 1408791 (M.D. Tenn. Apr. 2, 2010) ...................................23

*Bovee v. Coopers & Lybrand,*
216 F.R.D. 596 (S.D. Ohio 2003)........................................25, 29, 32

*Califano v. Yamasaki,*
442 U.S. 682 (1979)...............................................................................32

*Cates v. Cooper Tire & Rubber Co.,*
253 F.R.D. 422 (N.D. Ohio 2008) .......................................................26

*Cosby v. KPMG LLP,*
2022 U.S. Dist. LEXIS 168214
(E.D. Tenn. July 12, 2022).....................................................................16

*Daffin v. Ford Motor Co.,*
458 F.3d 549 (6th Cir. 2006)
*amending order* 264 F.R.D. 298 (N.D. Ohio 2009) ...........................24

*Deutschman v. Beneficial Corp.,*
132 F.R.D. 359 (D. Del. 1990) .............................................................29

*Fidel v. Farley,*
534 F.3d 508 (6th Cir. 2008) ...............................................................21

*Franks v. Kroger Co.,*
649 F.2d 1216 (6th Cir. 1981),
*vacated on other grounds and modified,*
670 F.2d 71 (6th Cir. 1982) .................................................................19

*Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.,*
2012 WL 1071281 (M.D. Tenn. Mar. 29, 2012)....................23, 25, 28

- iii -

**Page**

*Gaynor v. Miller*,
    2018 WL 3751606 (E.D. Tenn. Aug. 6, 2018)....................................................28

*Grae v. Corrs. Corp. of Am.*,
    2021 WL 5234966 (M.D. Tenn. Nov. 8, 2021)..................................................17

*Griffin v. Flagstar Bancorp, Inc.*,
    2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ..................................................9

*Hyland v. HomeServices of Am., Inc.*,
    2012 WL 122608 (W.D. Ky. Jan. 17, 2012) .....................................................11

*In re Accredo Health, Inc.*,
    2006 U.S. Dist. LEXIS 97621 (W.D. Tenn. Mar. 7, 2006)...............................24

*In re Am. Med. Sys., Inc.*,
    75 F.3d 1069 (6th Cir. 1996) ................................................................23, 26, 27

*In re Constar Int'l Inc. Sec. Litig.*,
    585 F.3d 774 (3d Cir. 2009) ..............................................................................30

*In re Direct Gen. Corp.*,
    2006 WL 2265472 (M.D. Tenn. Aug. 8, 2006)..................................................26

*In re Genworth Fin. Sec. Litig.*,
    2016 WL 7187290 (E.D. Va. Sept. 26, 2016) ...................................................17

*In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*,
    2009 WL 1473975 (S.D. Ohio May 27, 2009)..................................................16

*In re Se. Milk Antitrust Litig.*,
    2013 WL 2155387 (E.D. Tenn. May 17, 2013) .................................................17

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
    2014 WL 11669877 (E.D. Tenn. Apr. 30, 2014)...............................................18

*International Union, United Auto., Aerospace,*
    *& Agr. Implement Workers of America v. Gen. Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) .........................................................................8, 19

*IUE-CWA v. Gen. Motors Corp.*,
    238 F.R.D. 583 (E.D. Mich. 2006) ...................................................................19

**Page**

*Kizer v. Summit Partners, L.P.*,
   2012 WL 1598066 (E.D. Tenn. May 7, 2012) ....................................................21

*Livonia Emps.' Ret. Sys. v. Talmer Bankcorp, Inc.*,
   2016 WL 11549401 (E.D. Mich. Sept. 14, 2016) .............................................28

*Motter v. O'Brien*,
   2014 WL 12892732 (S.D. Ohio June 12, 2014).........................................19, 20

*N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*,
   315 F.R.D. 226 (E.D. Mich. 2016),
   *aff'd sub nom. Marro v. N.Y. State Tchrs.' Ret. Sys.*,
   2017 WL 6398014 (6th Cir. Nov. 27, 2017). ....................................................15

*Palazzolo v. Fiat Chrysler Autos. N.V.*,
   2019 WL 2957143 (E.D. Mich. June 5, 2019) ..................................................16

*Palm Tran, Inc. Amalgamated Transit Union Loc. 1577 Pension Plan v. Credit
   Acceptance Corp.*,
   2022 WL 17582004 (E.D. Mich. Dec. 12, 2022) ........................................10, 16

*Picard Chem., Inc. Profit Sharing Plan v. Perrigo Co.*,
   1996 WL 739170 (W.D. Mich. Sept. 27, 1996) .................................................32

*Putnam v. Davies*,
   169 F.R.D. 89 (S.D. Ohio 1996)........................................................................25

*Randleman v. Fid. Nat'l Title Ins. Co.*,
   251 F.R.D. 267 (N.D. Ohio 2008) .....................................................................24

*Ross v. Abercrombie & Fitch Co.*,
   257 F.R.D. 435 (S.D. Ohio 2009).................................................................24, 25

*Schuh v. HCA Holdings, Inc.*,
   2014 WL 4716231 (M.D. Tenn. Sept. 22, 2014)....................................24, 28, 30

*Sprague v. Gen. Motors Corp.*,
   133 F.3d 388 (6th Cir. 1998) .............................................................................26

*Stout v. J.D. Byrider*,
   228 F.3d 709 (6th Cir. 2000) .............................................................................27

**Page**

*Weinberg v. Insituform Techs.*,
    1995 WL 368002 (W.D. Tenn. Apr. 7, 1995) ..............................................30, 31

*Wilkof v. Caraco Pharm. Lab'ys, Ltd.*,
    280 F.R.D. 332 (E.D. Mich. 2012) .....................................................................24

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) ........................................................................18, 21

*Zimmerman v. Diplomat Pharmacy Inc.*,
    2019 WL 3942483 (E.D. Mich. Aug. 20, 2019)................................................16

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §77k.....................................................................................................................26, 30
    §77k(e) ......................................................................................................................30
    §77o.....................................................................................................................25, 26
    §77z-1(a)(4) ...................................................................................................3, 4, 5, 17

26 C.F.R.
    §1.468B-1 ...................................................................................................................4

Federal Rules of Civil Procedure
    Rule 23 .....................................................................................................................32
    Rule 23(a)..............................................................................................................23, 28
    Rule 23(a)(1)............................................................................................................23
    Rule 23(a)(2)............................................................................................................25
    Rule 23(a)(3)............................................................................................................26
    Rule 23(a)(4)............................................................................................................27
    Rule 23(b)...........................................................................................................28, 30
    Rule 23(b)(3)................................................................................................29, 30, 32
    Rule 23(c)(2)............................................................................................................21
    Rule 23(e)............................................................................................................8, 20
    Rule 23(e)(1)......................................................................................................3, 6, 7
    Rule 23(e)(1)(B)......................................................................................................20
    Rule 23(e)(2)...................................................................................................2, 3, 6, 7
    Rule 23(e)(2)(A) ........................................................................................................8
    Rule 23(e)(2)(B)......................................................................................................10
    Rule 23(e)(2)(C)......................................................................................................11
    Rule 23(e)(2)(C)(ii)................................................................................................14

**Page**

Rule 23(e)(2)(C)(iii) ........................................................................16
Rule 23(e)(2)(C)(iv).........................................................................17
Rule 23(e)(2)(D) ..............................................................................18
Rule 23(e)(3)......................................................................................7
Rule 23(f) ........................................................................................13

- vii -

## STATEMENT OF ISSUES PRESENTED

Pursuant to Local Rule 7.1(d)(2), Lead Plaintiff identifies the following issues presented:

1.      Whether the Court should preliminarily approve the Settlement of this securities class action, which involves payment of $5,000,000 in cash for the benefit of the Settlement Class, and find that it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1).

2.      Whether the Court should preliminarily certify the Litigation as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) for purposes of effectuating the Settlement only.

3.      Whether the Court should approve the form and manner of providing notice to the class of the proposed Settlement.

4888-5104-3188.v2

## STATEMENT OF CONTROLLING AUTHORITY

Pursuant to Local Rule 7.1(d)(2), Lead Plaintiff identifies the following controlling authority for the relief sought:

1. Fed. R. Civ. P. 23

2. 15 U.S.C. §77z

3. *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

4. *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008)

4888-5104-3188.v2

Lead Plaintiff Abdulaziz Jamal Johar Al-Johar ("Lead Plaintiff") respectfully submits this memorandum in support of his unopposed motion for preliminary approval of the settlement reached in this Litigation (the "Settlement").[1] This proposed Settlement, memorialized in the Stipulation, provides a recovery of $5,000,000 in cash to resolve this securities class action against all Defendants. Counsel for Lead Plaintiff has met and conferred with counsel for Defendants, and while Defendants do not adopt or agree with certain of the arguments or characterizations set forth herein, they do not oppose the relief requested herein.

Lead Plaintiff seeks entry of an order: (1) granting preliminary approval of the proposed Settlement; (2) approving the form and manner of giving notice of the proposed Settlement to the Settlement Class; (3) preliminarily granting class certification for settlement purposes; and (4) setting a hearing date for final approval of the Settlement, approval of the Plan of Allocation of the Net Settlement Fund, Lead Counsel's application for attorneys' fees and expenses, and an award reflecting Lead Plaintiff's time and expenses (the "Final Approval Hearing"), and a schedule for various deadlines ("Notice Order"). The Settlement is an excellent result for the

---

[1]   Unless otherwise defined herein, all capitalized terms have the meanings provided in the September 14, 2023 Stipulation of Settlement (the "Stipulation"), filed concurrently herewith. Emphasis is added and citations are omitted throughout unless otherwise noted.

- 1 -

Settlement Class, is fair, reasonable, and adequate under the governing standards in this Circuit, and warrants preliminary and ultimately final approval of this Court.

## I.   INTRODUCTION

The Settlement provides a significant recovery for the Settlement Class: $5 million in cash.  It was reached by experienced counsel after arm's-length mediation overseen by a highly experienced mediator, Gregory Lindstrom of Phillips ADR. The proposed Settlement easily satisfies Rule 23(e)(2) and the Sixth Circuit's standards for settlement approval.  The Settlement is fair, reasonable, and adequate, as it provides for an all-cash recovery without the risks of further litigation.

Lead Plaintiff and Lead Counsel support the Settlement.  Lead Plaintiff, an investment professional with a degree in accounting and finance and experience as an accountant and auditor, has actively participated in and overseen the Litigation. Lead Counsel Robbins Geller Rudman & Dowd LLP ("Robbins Geller") has vast securities litigation experience, and its attorneys are recognized as leading experts in the field.  Lead Plaintiff retained Robbins Geller specifically because of its experience and acumen in large complex securities matters like this one.  Although Lead Plaintiff and Lead Counsel believe strongly in the merits of this case, they understood that there were serious risks in continued litigation.  At trial, Lead Plaintiff would have had the burden of proving each of the elements of his claims; Defendants would have to defeat just one to prevail.  Discovery, trial, and an

inevitable appeal would have been very expensive and may have taken years, and either side could have prevailed.

At this stage, the Court need only determine that it will "likely" be able to grant its approval under Rule 23(e)(2) (*see* Fed. R. Civ. P. 23(e)(1)) such that the Settlement Class should be notified of the proposed Settlement.  In light of the recovery obtained and the risks and expenses posed by a trial of this case, Lead Plaintiff respectfully requests that the Court enter the Notice Order, which will:

- certify the Settlement Class for settlement purposes only;

- approve the form and content of the Notice and Summary Notice, attached as Exhibits A-1 and A-3 to the Stipulation;

- find that the procedures for distribution of the Notice and publication of the Summary Notice in the manner and form set forth in the Notice Order constitute the best notice practicable under the circumstances and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and

- set a schedule and procedures for disseminating the Notice and publishing the Summary Notice; requesting exclusion from the Settlement Class; objecting to the Settlement, the Plan of Allocation or Lead Counsel's application for an award of attorneys' fees and litigation expenses, including an award to the Lead Plaintiff pursuant to 15 U.S.C. §77z-1(a)(4); submitting papers in support of final approval of the Settlement; and the Final Approval Hearing.

## II.    THE TERMS OF THE SETTLEMENT

The Settlement set forth in the Stipulation resolves, fully, finally and with prejudice, the claims against Defendants by a class of all Persons who purchased or otherwise acquired common stock in Home Point Capital Inc.'s ("Home Point" or

- 3 -

the "Company") January 2021 IPO or purchased Home Point common stock after the IPO and on or before June 21, 2021. Pursuant to the proposed Settlement, Defendants have paid $5 million in cash (the "Settlement Amount"), which has been deposited into an interest-bearing escrow account. Interest on the Settlement Amount will accrue for the benefit of the Settlement Class and is included in what is referred to herein as the Settlement Fund. Notice to the Settlement Class and the cost of settlement administration ("Notice and Administration Costs") will be funded by the Settlement Fund. Stipulation, ¶5.2. Lead Plaintiff proposes that a nationally recognized class action settlement administrator, Gilardi & Co. LLC ("Gilardi"), be retained here. The proposed notice plan and plan for claims processing is discussed below in §IV.

Because the Settlement Fund is a "qualified settlement fund" under Treas. Reg. §1.468B-1, income earned on the Settlement Fund is taxable. All Settlement Fund Taxes and Tax Expenses shall be paid out of the Settlement Fund.

Lead Plaintiff intends to request an amount not to exceed $25,000 pursuant to 15 U.S.C. §77z-1(a)(4) in connection with his representation of the Settlement Class. Any such amount the Court awards shall be paid from the Settlement Fund.

Lead Counsel will submit an application with its opening papers in support of final approval of the Settlement for: (a) an award of attorneys' fees in the amount of up to 30% of the Settlement Amount; (b) payment of expenses or charges resulting

- 4 -

from the prosecution of the Litigation in an amount not to exceed $60,000; and (c) any interest on such amounts at the same rate and for the same period as earned by the Settlement Fund.  Such fees and expenses shall be paid from the Settlement Fund once the Court executes the Judgment and upon entry of the order awarding such fees and expenses.

Once Notice and Administration Costs, Taxes, Tax Expenses, Court-awarded attorneys' fees, expenses, and interest thereon, any award to Lead Plaintiff under 15 U.S.C. §77z-1(a)(4), and any other Court-approved deductions have been paid from the Settlement Fund, the remainder (the "Net Settlement Fund") shall be distributed pursuant to the Court-approved Plan of Allocation to Authorized Claimants who are entitled to a distribution of at least $10.00.

In exchange, Settlement Class Members will release any and all claims against Defendants that arise out of, are based upon, or relate in any way to both (i) any of the allegations, acts, transactions, facts, events, matters, occurrences, representations, or omissions involved, set forth, alleged or referred to in the Litigation, or which could have been alleged in the Litigation, and (ii) the purchase, acquisition, holding, sale, or disposition of any Home Point securities purchased or acquired in or traceable to Home Point's January 2021 IPO.  Stipulation, ¶1.22.

The Notice of Pendency and Proposed Settlement of Class Action ("Notice") explains the terms of the Settlement, including that the Net Settlement Fund will be

- 5 -

distributed to eligible Settlement Class Members who submit valid and timely Proof of Claim and Release forms ("Proof of Claim") pursuant to the proposed Plan of Allocation included in the Notice and subject to this Court's approval; there will be no reversion to Defendants once the Settlement becomes effective.  The Notice also informs Settlement Class Members of, among other things, Lead Counsel's application for attorneys' fees and expenses and the proposed Plan of Allocation. The Notice further details: (i) the procedures and deadlines for opting out of the Settlement Class and objecting to the Settlement, the Plan of Allocation, or the request for attorneys' fees and expenses; and (ii) the date, time, and location of the Final Approval Hearing.

If the Court grants preliminary approval, the Claims Administrator will mail the Notice and Proof of Claim (attached as Exhibits A-1 and A-2 to the Stipulation) to Settlement Class Members who can be identified with reasonable effort.  The Notice and Proof of Claim may be accessed, downloaded, or printed from the Settlement website.  Additionally, the Claims Administrator will cause the Summary Notice (attached as Exhibit A-3 to the Stipulation) to be published once in *The Wall Street Journal* and once over a national newswire service.

## III.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

Pursuant to Rule 23(e)(1), the issue at preliminary approval is whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii)

certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1).

Rule 23(e)(2) provides:

> (2)   ***Approval of the Proposal***.   If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
>> A.   the class representatives and class counsel have adequately represented the class;
>>
>> B.   the proposal was negotiated at arm's length;
>>
>> C.   the relief provided for the class is adequate, taking into account:
>>
>>> (i)   the costs, risks, and delay of trial and appeal;
>>>
>>> (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>>
>>> (iii)   the terms of the proposed award of attorney's fees, including timing of payment; and
>>>
>>> (iv)   any agreement required to be identified under Rule 23(e)(3); and
>>
>> D.   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).   In addition, when "'determining whether the proposed settlement is fair, adequate and reasonable,'" courts in the Sixth Circuit take into account the following factors (several of which overlap with Rule 23(e)(2)):

> (1)   the plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement;
>
> (2)   the complexity, expense and likely duration of the litigation;

- 7 -

(3)    the stage of the proceedings and the amount of discovery completed;

(4)    the judgment of experienced trial counsel;

(5)    the nature of the negotiations;

(6)    the objections raised by the class members; and

(7)    the public interest.

*International Union, United Auto., Aerospace, & Agr. Implement Workers of America v. Gen. Motors Corp.*, 497 F.3d 615, 632, 636 (6th Cir. 2007) ("*UAW*").

The proposed Settlement easily satisfies Rule 23(e) and the Sixth Circuit's factors, each of which is addressed below (some together, to the extent they overlap).

### A.    Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class

Lead Plaintiff and his counsel have adequately represented the Settlement Class, satisfying Rule 23(e)(2)(A) (the class representatives and class counsel adequately represented the class), as well as the Sixth Circuit's third factor (the stage of proceedings and the amount of discovery completed), by diligently prosecuting this Litigation on their behalf.  This includes an extensive review of publicly-available materials concerning the Company; drafting the operative complaint; successfully opposing Defendants' motion to dismiss; conducting fact discovery; moving for class certification; and engaging in a mediation process.

In fact discovery, Lead Counsel reviewed thousands of pages of documents produced by Defendants, Home Point's auditor (BDO USA, LLP), and a lead

underwriter for the IPO (Goldman Sachs & Co. LLC). Because this case concerns Home Point's allegedly misleading statements concerning its costs, Lead Counsel prioritized the Company's relevant internal management presentations concerning, for example, any cost-reduction initiatives. Additionally, Home Point's auditor produced a table listing over 1,200 audit documents, from which Lead Counsel selected and reviewed over 200 documents that appeared most relevant. These included detailed records of Home Point's expenses, spreadsheets in which Home Point's costs were evaluated to determine whether they were being reported accurately, board meeting minutes and presentations, management presentations and representation letters, IPO-related materials, financial statements and notes, internal audit reports, auditor memoranda and reports, supporting spreadsheets, and related email communications. Lead Counsel then analyzed these documents with the assistance of its in-house forensic accountant.

Even "'the absence of formal discovery is not an obstacle to settlement approval so long as the parties and the Court have adequate information in order to evaluate the relative position of the parties.'" *Palm Tran, Inc. Amalgamated Transit Union Loc. 1577 Pension Plan v. Credit Acceptance Corp.*, 2022 WL 17582004, at *4 (E.D. Mich. Dec. 12, 2022) (internal brackets omitted) (quoting *Griffin v. Flagstar Bancorp, Inc.*, 2013 WL 6511860, at *3 (E.D. Mich. Dec. 12, 2013)). Here, Lead Counsel conducted a focused discovery process that uncovered the most

important categories of documents, and analyzed those documents with expert assistance to gain an understanding of the relative strengths and weaknesses of the claims and defenses at issue. Lead Plaintiff and Lead Counsel's efforts were critical in obtaining a Settlement of $5 million for the Settlement Class.

**B.     The Settlement Is the Result of a Thorough, Rigorous and Arm's-Length Negotiation Process**

After extensive arm's-length negotiations with the assistance of an experienced mediator, Lead Plaintiff and Lead Counsel reached an agreement with Defendants to settle for $5 million in cash. Accordingly, Rule 23(e)(2)(B) (the proposal was negotiated at arm's length) and the Sixth Circuit's overlapping fifth factor (the nature of the negotiations) are clearly satisfied.

On May 3, 2023, after submitting mediation statements, the parties attended a full-day, in-person mediation with Mr. Lindstrom. While a settlement was not reached during that session, the parties continued their good faith efforts to resolve the case. In those discussions, Lead Counsel insisted on, and succeeded in obtaining, the opportunity to receive and review critical documents from Home Point's auditor before agreeing to a settlement. On June 29, 2023, the parties executed a Settlement Term Sheet agreeing to settle the case for $5,000,000.

The negotiations were at arm's length and were informed by, among other things, extensive investigation and litigation by Lead Counsel, including: (i) analysis of publicly available information about Home Point; (ii) motion practice seeking

- 10 -

dismissal of the claims; (iii) review and analysis of documents produced by Defendants, the Company's auditor, and a lead underwriter of the IPO in response to Lead Plaintiff's discovery requests; and (iv) consultation with two experts: Lead Counsel's in-house forensic accountant, and Lead Counsel's in-house damages expert.   Lead Plaintiff and Lead Counsel were unquestionably well-informed regarding the strengths and weaknesses of their case, and the Settlement resulted from a thorough, arm's-length process.[2]

## C.   The Settlement Also Satisfies Rule 23(e)(2)(C)'s Adequacy Criteria

### 1.   The Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal

The proposed Settlement satisfies the adequacy standard, taking into account the costs, risks, and delay of trial and appeal, which also covers the Sixth Circuit's overlapping second factor (the complexity, expense, and likely duration of the litigation).  The Settlement also satisfies the Sixth Circuit's first factor (plaintiff's likelihood of ultimate success on the merits balanced against the settlement amount).

---

[2]   *See Hyland v. HomeServices of Am., Inc.*, 2012 WL 122608, at *2 (W.D. Ky. Jan. 17, 2012) (when determining whether preliminary approval is appropriate, courts should evaluate whether the settlement "'appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval'").

Given the complexities of this Litigation, the many issues in contention, the amount in controversy, and the substantial risks of continued litigation, Lead Counsel believes the Settlement, which provides an immediate and substantial benefit of $5 million in cash, represents a favorable resolution of this Litigation. Importantly, the Settlement eliminates the risk that Lead Plaintiff and the Settlement Class might recover less, or even nothing, if the Litigation continued.

Although Lead Plaintiff believes his case is strong, he acknowledges, as he must, that there are risks to ultimate recovery.  For example, Defendants have argued that Home Point's statements about its cost structure were not misleading because Home Point had disclosed the extent to which its expenses were variable or fixed, and the Offering Documents contained risk disclosures that addressed the potential for rising costs.[3]  Further, while the Court ruled that the alleged misstatements that remain in this case are not puffery for motion-to-dismiss purposes,[4] Lead Plaintiff would face a more challenging standard in later stages of the case, and would have to overcome any evidence that Home Point was making at least some effort to control its costs.  Lead Plaintiff would have also faced arguments that there is no

---

[3]  *See* Brief in Support of Defendants' Motion to Dismiss the Amended Complaint, ECF No. 26, PageID. 300-303.

[4]  Order Granting in Part and Denying in Part Defendant's Motion to Dismiss, ECF No. 39, PageID. 1684-1686.

- 12 -

loss causation on the ground that the decline in Home Point's stock price was predominately caused by unrelated factors, such as increasing interest rates and intense competition with other wholesale mortgage lenders.  Lead Plaintiff and Defendants would likely have hired economic experts to opine on loss causation, and a "battle of the experts" is inevitably costly, with uncertain results.  Defendants have also argued that much of the decline in Home Point's stock price during the relevant period occurred before Home Point allegedly revealed the truth about its costs, potentially limiting recoverable damages.[5]  Finally, Defendants could seek an interlocutory appeal of any class certification order under Rule 23(f), the outcome of which would be uncertain and delay the ultimate resolution of the Litigation.

Lead Plaintiff believes he has strong responses to each of Defendants' arguments, but if Defendants had succeeded with respect to even one of them, the Settlement Class may have recovered little or nothing.  Lead Plaintiff also had to consider Home Point's financial viability, as the Company entered into a number of transactions to sell off its assets and wind down its operations in early 2023.  Lead Plaintiff had to take into account the possibility that litigating this case through trial and appeal would have delayed a resolution such that Home Point's ability to fully fund a recovery for the Settlement Class may have been in question.

---

[5] *See* Brief in Support of Defendants' Motion to Dismiss the Amended Complaint, ECF No. 26, PageID. 311.

In sum, Lead Counsel was fully informed of the strengths and weaknesses of the case.  Given these and other risks faced by the Settlement Class, a positive result was far from assured.

### 2.    The Method of Distributing Relief Is Effective

The method and effectiveness of the proposed notice and claims administration process also satisfies Rule 23(e)(2)(C)(ii).

The notice plan is discussed below in §IV and includes direct-mail notice to all those who can be identified with reasonable effort, supplemented by the publication of the Summary Notice in *The Wall Street Journal* and over a national newswire service.  Gilardi will use time-tested methods to ensure Settlement Class Members who hold Home Point common stock in their own names, as well as those who hold Home Point common stock in "street name" (*i.e.*, in a broker's name), will receive a copy of the Notice and Proof of Claim.  First, Gilardi will obtain the names of Settlement Class Members who hold Home Point common stock in their own names from the Company's transfer agent.  In addition, Gilardi will contact brokers, banks, and other institutions known as Nominee Holders.  Based on experience locating class members who hold securities in street name, Gilardi has developed a proprietary list of approximately 250 Nominee Holders, to whom it will send a

- 14 -

Notice, Proof of Claim, and cover letter.[6]  Lastly, Gilardi will establish a case-specific website and post important documents regarding the Settlement, and will provide a toll-free number that Settlement Class Members can call to make inquiries. This notice program has regularly been found to satisfy due process.  *See N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 242 (E.D. Mich. 2016) (finding similar notice program "satisfied Rule 23's notice requirement"), *aff'd sub nom. Marro v. N.Y. State Tchrs.' Ret. Sys.*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

The claims process is also effective and includes a standard claim form that requests information to calculate claim amounts pursuant to the Plan of Allocation. The Plan of Allocation will govern how Settlement Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants. The Plan of Allocation was prepared by Lead Counsel's in-house damages expert. A thorough claim review process is explained in the Stipulation and the Notice.

### 3.    Attorneys' Fees and Expenses

Rule 23(e)(2)(C)(iii) addresses the attorneys' fee award Lead Counsel intends to seek.  As discussed above in §II, Lead Counsel intends to request fees in the

---

[6]   Gilardi will also send the Notice, Proof of Claim, and cover letter to the approximately 4,500 financial institutions registered with the SEC as potential Nominee Holders.  In addition, Gilardi will send additional copies of the Notice and Proof of Claim to those Nominee Holders who indicate they will directly send the documents to their clients who may be Settlement Class Members.

amount of up to 30% of the Settlement Amount and expenses in an amount not to exceed $60,000, plus interest on both amounts.  This fee request falls within the range of fees commonly awarded in the Sixth Circuit on a percentage basis in complex common fund cases similar to this one.  *See, e.g.*, *Palm Tran, Inc.*, 2022 WL 17582004, at *5 (approving 30% fee as "within the range of percentage fee awards generally accepted in this District"); *Cosby v. KPMG LLP*, 2022 U.S. Dist. LEXIS 168214, at *1-*2 (E.D. Tenn. July 12, 2022) (awarding 33-1/3% fee, plus expenses); *Palazzolo v. Fiat Chrysler Autos. N.V.*, 2019 WL 2957143, at *1-*2 (E.D. Mich. June 5, 2019) (awarding 30% fee, plus expenses); *Zimmerman v. Diplomat Pharmacy Inc.*, 2019 WL 3942483, at *1-*2 (E.D. Mich. Aug. 20, 2019) (same); *In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*, 2009 WL 1473975, at *3 (S.D. Ohio May 27, 2009) (concluding 30% of the settlement amount was "within the percentage range that courts have awarded in securities class action settlements in the Sixth Circuit").[7]  In addition, Lead Counsel will request that any award of fees and expenses be paid at the time the Court makes its award.  *See In re Genworth Fin.*

---

[7]   *See also Grae v. Corrs. Corp. of Am.*, 2021 WL 5234966, at *1 (M.D. Tenn. Nov. 8, 2021) ("The Court finds that the amount of fees awarded [one-third of $56 million recovery] is fair and reasonable under the 'percentage-of-recovery' method . . . and that the awarded fee is in accord with Sixth Circuit precedent."); *In re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *3 (E.D. Tenn. May 17, 2013) (holding that "attorneys' fees requested represent one-third of the settlement fund. . . . the percentage requested is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit").

*Sec. Litig.*, 2016 WL 7187290, at *2 (E.D. Va. Sept. 26, 2016) (ordering that "attorneys' fees and Litigation Expenses awarded above may be paid to Lead Counsel immediately upon entry of this Order").

Further, Lead Plaintiff intends to request an amount not to exceed $25,000 pursuant to 15 U.S.C. §77z-1(a)(4) in connection with his representation of the Settlement Class.

### 4.   Identification of Agreements

Rule 23(e)(2)(C)(iv) calls for the disclosure of any other agreements entered into in connection with the settlement of a class action.  The parties have entered into a standard supplemental agreement providing that if a threshold number of valid opt-outs are received, Home Point will have the right (but not the obligation) to terminate the Settlement.  Stipulation, ¶7.3.

### D.   Settlement Class Members Are Treated Equitably

As reflected in the Plan of Allocation (Stipulation, Ex. A-1 at 19-23), the Settlement treats Settlement Class Members equitably relative to each other, while taking into account the timing of their purchase or acquisition of Home Point common stock and their subsequent disposition of such common stock, if any, and provides that each Authorized Claimant shall receive his, her or its *pro rata* share of the Net Settlement Fund based on their recognized losses as calculated in the Plan of Allocation.  Accordingly, Rule 23(e)(2)(D) is satisfied.

### E.     The Judgment of Experienced Trial Counsel

The Sixth Circuit's fourth factor (judgment of experienced counsel) is also satisfied.  Lead Counsel, having carefully considered and evaluated, *inter alia*, the relevant legal authorities and evidence; the likelihood of prevailing on the claims; the risk, expense, and duration of continued litigation; and any appeals and subsequent proceedings, has concluded that the Settlement is fair, reasonable, and in the best interest of the Settlement Class.

Significant weight should be attributed to experienced counsel's evaluation and conclusion that a settlement is in the best interests of the class.  *See Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) (stating that courts should defer to the judgment of experienced counsel who have evaluated the strength of plaintiff's case); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 11669877, at *3 (E.D. Tenn. Apr. 30, 2014) (when a "'settlement is the result of extensive negotiations by experienced counsel, the Court should presume it fair'"); *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 597 (E.D. Mich. 2006) ("The judgment of the parties' counsel that the settlement is in the best interest of the settling parties 'is entitled to significant weight, and supports the fairness of the class settlement.'").  Here, Lead Counsel has significant experience in securities and other complex class action litigation and has negotiated numerous other substantial class action recoveries throughout the country, including in this District and within the Sixth Circuit.  *See*

www.rgrdlaw.com.  Given Lead Counsel's experience, substantial weight should be given to its determination that the Settlement is an excellent result that confers substantial, immediate benefits on the Settlement Class.

### F.     The Sixth Circuit's Public Interest Factor Is Satisfied

As a matter of public policy, settlement is a strongly favored method for resolving disputes, particularly in complex class actions such as this.  *See, e.g.*, *UAW*, 497 F.3d at 632 (noting the "federal policy favoring settlement of class actions"); *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981) ("the law generally favors and encourages the settlement of class actions"), *vacated on other grounds and modified*, 670 F.2d 71 (6th Cir. 1982); *Motter v. O'Brien*, 2014 WL 12892732, at *1 (S.D. Ohio June 12, 2014) ("The Court further recognizes that 'the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'").

The fairness and adequacy of the $5 million recovery are clear.  Given the risks involved, it is an excellent result for the Settlement Class.  It could not have been achieved without full commitment by Lead Plaintiff and his counsel.  Lead Plaintiff and Lead Counsel respectfully submit that the Settlement is both fair and adequate such that notice of the Settlement should be sent to the Settlement Class.

While Lead Plaintiff and his counsel believe the Settlement merits final approval, the Court need not make that determination at this time.  The Court is

- 19 -

being asked simply to permit notice of the terms of the Settlement to be sent to the Settlement Class and to schedule a hearing, pursuant to Rule 23(e), to consider any views expressed by Settlement Class Members regarding the fairness of the Settlement, the Plan of Allocation, and Lead Counsel's request for an award of fees and expenses, including Lead Plaintiff's request for an award for his time and expenses incurred in representing the Settlement Class.  Fed. R. Civ. P. 23(e); *Motter*, 2014 WL 12892732, at \*1.

## IV.    THE PROPOSED NOTICE PROGRAM IS APPROPRIATE

Rule 23(e) governs notice requirements for class action settlements, and provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).

The Notice Order will require the Claims Administrator to (i) notify Settlement Class Members of the Settlement by mailing or emailing a copy of the Notice and Proof of Claim to all Settlement Class Members who can be identified with reasonable effort, and (ii) cause a copy of the Summary Notice to be published once in the national edition of *The Wall Street Journal* and once over a national newswire service.  The proposed method of giving notice is appropriate because it is calculated to reach Settlement Class Members who can be identified with reasonable effort.  *Fidel v. Farley*, 534 F.3d 508, 515 (6th Cir. 2008) (notice plan sufficient because it was "'reasonably calculated to reach interested parties'");

- 20 -

*Williams*, 720 F.2d at 921 (class must receive the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort); *Kizer v. Summit Partners, L.P.*, 2012 WL 1598066, at *9 (E.D. Tenn. May 7, 2012) (sufficient notice where mailings were made to last known addresses of class members).

As required by Rule 23(c)(2) and the PSLRA, the Notice describes in plain English the nature of the Litigation; sets forth the definition of the Settlement Class; states the Settlement Class' claims; and discloses the right of Settlement Class Members to object to the Settlement, Plan of Allocation, and/or Lead Counsel's fee and expense request or award to Lead Plaintiff, and explains that Settlement Class Members may exclude themselves from the Settlement Class, provides the deadline and procedure for doing so, and warns of the binding effect of settlement approval proceedings on Settlement Class Members who do not exclude themselves.   In addition, the Notice describes the Settlement; the Settlement Amount, both in the aggregate and on an average per-share distribution basis; explains the Plan of Allocation; sets out the amount of attorneys' fees and expenses that Lead Counsel intends to seek in connection with final settlement approval, including on an average per-share basis; the amount sought by Lead Plaintiff for his time and expenses; provides contact information for Lead Counsel, including a toll-free telephone number; and summarizes the reasons the parties are proposing the Settlement.  The

4888-5104-3188.v2

Notice also provides the date, time, and place of the Final Approval Hearing, and the procedures for appearing at the hearing. Lead Counsel believes that the Notice will fairly apprise Settlement Class Members of their rights, that it is the best notice practicable under the circumstances, and that it should be approved.

## V.   THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS

As part of the Settlement, the parties request that the Court certify the following Settlement Class:

> [A]ll Persons who purchased or otherwise acquired common stock in Home Point's IPO or purchased Home Point common stock after the IPO and on or before June 21, 2021 in the stock market pursuant and/or traceable to the Company's Offering Documents issued in connection with the IPO, and were alleged to be damaged thereby. Excluded from the Settlement Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and their legal representatives, heirs, predecessors, successors or assigns, and any entity in which the officers and directors of the Company have or had a controlling interest. Also excluded from the Settlement Class is any Person who would otherwise be a Member of the Settlement Class but who validly and timely exclude themselves in accordance with the requirements set by the Court.

Stipulation, ¶1.28.

In certifying a class for purposes of settlement, courts are afforded broad discretion. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Courts within this Circuit overwhelmingly find securities actions appropriate for class treatment. *See, e.g., Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*, 2012 WL 1071281 (M.D. Tenn. Mar. 29, 2012); *Beach v. Healthways, Inc.*, 2010 WL

1408791 (M.D. Tenn. Apr. 2, 2010).   As demonstrated below, for settlement purposes, the requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy) and (b)(3) (predominance of common questions of fact or law and superiority of the class action as the method of adjudication) are readily satisfied.[8]

## A.   The Settlement Class Meets the Requirements of Rule 23(a)

### 1.   Numerosity

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable.   "Numerosity is not measured by a strict numerical test."  *Randleman v. Fid. Nat'l Title Ins. Co.*, 251 F.R.D. 267, 274 (N.D. Ohio 2008) (citing *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006)), *amending order* 264 F.R.D. 298 (N.D. Ohio 2009).  Rather, a "substantial" number of members usually satisfies the requirement.  *Id.*

Courts have regularly recognized that numerosity can be assumed in class actions that involve "'nationally traded securities,'" such as this one.   *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 442 (S.D. Ohio 2009); *see also Schuh v. HCA Holdings, Inc.*, 2014 WL 4716231, at *13 (M.D. Tenn. Sept. 22, 2014) (numerosity established where case "involves the sale of millions of stock, and [plaintiff] estimates that the number of purchasers is likely to be 'in the thousands'

---

[8]   Lead Plaintiff's motion for class certification (ECF No. 49), which was not resolved when the Settlement was agreed upon, provides additional detail and support for class certification.

- 23 -

and that those purchasers reside in many states"); *Wilkof v. Caraco Pharm. Lab'ys, Ltd.*, 280 F.R.D. 332, 338 (E.D. Mich. 2012) ("stocks are traded nationally and possible members of the class are located throughout the country, making joinder impracticable"); *In re Accredo Health, Inc.*, 2006 U.S. Dist. LEXIS 97621, at *17 (W.D. Tenn. Mar. 7, 2006) (numerosity "'is generally assumed to have been met'" in cases involving nationally traded securities).

The numerosity requirement is satisfied here because 7.25 million shares of Home Point stock were publicly issued. Although the exact number of Settlement Class Members is presently unknown, the members of the Settlement Class likely number in the thousands or more, located around the world. These facts demonstrate that the Settlement Class satisfies the numerosity requirement.

### 2. Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality does not mandate that all class members make identical claims and arguments. *Ross*, 257 F.R.D. at 442 ("The claims of the potential class members need not be factually identical."). Rather, "'the commonality requirement will be satisfied as long as the members of the class have allegedly been affected by a general policy of the Defendant and the general policy is the focus of the litigation.'" *Id*. (quoting *Putnam v. Davies*, 169 F.R.D. 89,

- 24 -

93 (S.D. Ohio 1996)). In fact, "[t]he commonality test requires only a single issue common to all class members." *Psychiatric Sols.*, 2012 WL 1071281, at *35.

Here, the Complaint's allegations raise numerous questions common to the Settlement Class, including, *inter alia*, whether: (1) Defendants made materially false or misleading statements or omissions to investors in the Offering Documents; (2) Defendants' alleged misrepresentations caused the putative Settlement Class to suffer damages; (3) Defendants violated the federal securities laws; and (4) certain Defendants were "controlling persons" within the meaning of §15 of the Securities Act. Because all Settlement Class Members' claims depend on the answers to these common questions, commonality is established. *See Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 609 (S.D. Ohio 2003) (explaining that questions bearing upon misrepresentations and materiality are among "'the paradigmatic common question[s] of law in a securities fraud class action'") (alteration in original).

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "'The requirement of typicality is not onerous.'" *Cates v. Cooper Tire & Rubber Co.*, 253 F.R.D. 422, 429 (N.D. Ohio 2008). So long as the claims and defenses of a proposed class representative arise "'from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on

the same legal theory,'" they are typical. *Am. Med. Sys.*, 75 F.3d at 1082; *In re Direct Gen. Corp.*, 2006 WL 2265472, at *3 (M.D. Tenn. Aug. 8, 2006) at *3. Thus, typicality exists where a "'sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct.'" *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998).

Here, neither the facts nor the legal theories on which this action is based (violations of §§11 and 15 of the Securities Act) are unique to Lead Plaintiff because all Settlement Class Members' claims, including Lead Plaintiff's claims, arise from their investments in Home Point securities pursuant and/or traceable to the Offering Documents and Defendants' alleged misrepresentations and omissions as described in the Complaint. Lead Plaintiff's claims thus satisfy the typicality requirement.

### 4. Adequacy of Class Representatives

In applying the adequacy requirement of Rule 23(a)(4): (i) "'the representative must have common interests with unnamed members of the class'"; and (ii) "'it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *Am. Med. Sys.*, 75 F.3d at 1083. "The court reviews the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation, and to consider whether the class members have interests that are not antagonistic to one

another." *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000).  Lead Plaintiff satisfies both prongs of Rule 23(a)(4)'s adequacy test.

Lead Plaintiff's interests are not in conflict with those of any other Settlement Class Members.  To the contrary, Lead Plaintiff and all Settlement Class Members share common interests because their injuries all stem from the same conduct by Defendants.  Lead Plaintiff, like the other Settlement Class Members, is therefore interested in maximizing the Settlement Class's recovery.  Moreover, Lead Plaintiff does not seek a fundamentally different form of relief than any other Settlement Class Member, and does not stand to benefit from a unique resolution of the case.

Further, as detailed in his declaration in support of class certification, Lead Plaintiff is an investment professional with auditing and accounting experience, has vigorously prosecuted the claims in this case on behalf of all Settlement Class Members, and stayed informed about the status of the case through numerous conversations with counsel and his review of draft filings.  *See* ECF No. 49-2.

Moreover, Lead Counsel is highly qualified and its attorneys are experienced in the successful prosecution of class actions, satisfying the second prong of Fed. R. Civ. P. 23(a)(4).  *See* www.rgrdlaw.com.  Lead Counsel has been commended by courts in this District and across the country for the quality of its representation in class action lawsuits.  *See, e.g.*, *Livonia Emps.' Ret. Sys. v. Talmer Bankcorp, Inc.*, 2016 WL 11549401, at *7 (E.D. Mich. Sept. 14, 2016) ("Livonia's counsel, Robbins

- 27 -

Geller, is a well-known firm with extensive experience in complex securities ligation [and] will protect the interests of the purported class."); *Schuh*, 2014 WL 4716231, at *10 (affirming that Robbins Geller will "vigorously prosecute" the litigation); *Psychiatric Sols.*, 2012 WL 1071281, at *39 (finding Robbins Geller "experienced" and that it "will protect the interests of the class").

## B.  The Settlement Class Meets the Requirements of Rule 23(b)

"Once plaintiffs have satisfied each of the four prerequisites of Rule 23(a), they then must establish that the proposed class action meets at least one of the three categories set forth in Rule 23(b)." *Gaynor v. Miller*, 2018 WL 3751606, at *6 (E.D. Tenn. Aug. 6, 2018).  Class certification under Rule 23(b)(3) is appropriate because "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

"'The predominance test is not a numerical test and does not require the court to add up the common issues and the individual issues and determine which is greater.'" *Bovee*, 216 F.R.D. at 605 (quoting *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 375 (D. Del. 1990)).  "'Rather, the court must determine whether the members of the class seek a remedy to a common legal grievance and whether the common questions of law and fact central to the litigation are common to all class

- 28 -

members.'"  *Id.*  As the Supreme Court has noted, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Here, common questions of law and fact clearly predominate over individual questions because Defendants' liability turns on issues that are common to all the Settlement Class Members, *i.e.*, whether the Defendants made material misrepresentations and/or omissions in connection with the IPO.  "Predominance is usually decided on the question of liability, so that if the liability issue is common to the class, common questions are held to predominate over individual ones."  *Weinberg v. Insituform Techs.*, 1995 WL 368002, at *7 (W.D. Tenn. Apr. 7, 1995).  Moreover, damages are measurable using a common methodology across the Settlement Class, as §11(e) of the Securities Act provides a statutory formula for calculating damages.  15 U.S.C. §77k(e).

Common questions thus clearly predominate over any individual issues, as courts have routinely held in cases involving §11 claims.  *See, e.g.*, *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 784 (3d Cir. 2009) ("[B]ecause reliance is not an element under §11, the 'conduct of the defendants, not the knowledge of the plaintiffs, is determinative' of materiality. . . .  Since reliance is irrelevant in a §11 case, a §11 will never demand individualized proof as to an investor's reliance or knowledge [except in circumstances not present here].");  *Schuh*, 2014 WL 4716231,

at *7 (holding that the predominance requirement was satisfied for Section 11 claim; "since 'materiality is an objective issue susceptible to common, classwide proof,' the Court finds that Plaintiff has established that there are key questions, common to the entire class, which are best answered in the class context").

The superiority analysis of Rule 23(b) requires that the Court examine whether a class action is superior to other methods of adjudication, such as joinder. Fed. R. Civ. P. 23(b)(3). This provision is intended to permit class actions that would "'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem*, 521 U.S. at 615. Courts consider four factors to ensure that superiority is met: (1) the interests of members of the class in individually controlling the prosecution of separate actions; (2) whether other litigation has already commenced; (3) the desirability or undesirability of concentrating claims in one forum; and (4) the difficulties likely to be encountered in management of a class action. *Id.* at 616. Courts have found the superiority requirement is met where, as alleged here: (1) many of the class investors likely have suffered only small losses, making it improbable that they can afford to proceed individually; (2) use of the class action vehicle will achieve judicial economy, as well as prevent inconsistent judgments; (3) there are no other actions against the

- 30 -

company involving the same claims; and (4) the court foresees no particular difficulties with adjudicating the class action. *Weinberg*, 1995 WL 368002, at *8.

There is no indication that a substantial number of absent Settlement Class Members wish to control the prosecution of their claims individually. In any event, any Settlement Class Member who desires to do so will have the opportunity to opt-out of the Settlement Class. Lead Counsel is unaware of any other litigation by investors against Defendants asserting the claims involved here. Further, concentration of the Litigation in one forum is desirable to avoid potentially inconsistent adjudications and promote efficiency. Finally, this case presents no unusual difficulties in maintaining the class action or providing notice.

The class action device is thus the only practical method of obtaining a fair and efficient disposition of these claims. *See Bovee*, 216 F.R.D. at 607 ("Given that the proposed class consists of thousands of members and that the legal claims are narrowed to whether defendants committed securities violations, a class action will be the most fair and efficient way to resolve this dispute."). The alternative to a class action either leaves potentially thousands of investors without recourse, or requires a multiplicity of suits throughout the United States resulting in the inefficient administration of justice. *See Picard Chem., Inc. Profit Sharing Plan v. Perrigo Co.*, 1996 WL 739170, at *9 (W.D. Mich. Sept. 27, 1996) (stating, "[i]f this Court does not certify this class, hundreds of small shareholders . . . will be effectively barred

from seeking legal redress of their claims.  Furthermore, because the potential class members 'seek a determination on essentially the same issues, . . . a class action would enhance judicial economy and efficiency.'")  This is precisely "the evil that Rule 23 was designed to prevent." *Califano v. Yamasaki*, 442 U.S. 682, 690 (1979).

In short, because common issues predominate and a class action is far superior to any other means available to this Court, the Rule 23(b)(3) requirements are met.

## VI.   PROPOSED SCHEDULE OF EVENTS

The parties propose the following schedule concerning the Settlement:

| | |
|---|---|
| Notice and Proof of Claim mailed to the Settlement Class (the "Notice Date") | 21 calendar days after the Notice Order is signed and entered |
| Summary Notice published | 7 calendar days from the Notice Date |
| Deadline for filing Proofs of Claim | 90 calendar days from the Notice Date |
| Deadline for filing papers in support of the Settlement, Plan of Allocation, Lead Counsel's request for an award of attorneys' fees and expenses, and Lead Plaintiff's award of time and expenses | 35 calendar days prior to the Final Approval Hearing |
| Deadline for objecting to the Settlement, Plan of Allocation or attorneys' fees and expenses and for opting out of the Settlement Class | 21 calendar days prior to the Final Approval Hearing |

- 32 -

| Deadline for filing reply papers in support of the Settlement, Plan of Allocation, Lead Counsel's request for an award of attorneys' fees and expenses, and Lead Plaintiff's award of time and expenses | 7 calendar days before the Final Approval Hearing |
|---|---|
| Final Approval Hearing | At the Court's convenience, at least 100 calendar days after the entry of the Notice Order |

## VII.  CONCLUSION

The proposed $5,000,000.00 Settlement is an excellent recovery for the Settlement Class.  Lead Plaintiff respectfully requests that the Court preliminarily approve the Settlement and enter the Notice Order.

DATED:  September 15, 2023

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART
DANIELLE S. MYERS
JUAN CARLOS SANCHEZ

s/ Ellen Gusikoff Stewart
ELLEN GUSIKOFF STEWART

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
elleng@rgrdlaw.com
dmyers@rgrdlaw.com
jsanchez@rgrdlaw.com

- 33 -

ROBBINS GELLER RUDMAN
   & DOWD LLP
CHAD JOHNSON
JONATHAN ZWEIG
ANA AVALOS CUELLAR
420 Lexington Avenue, Suite 1832
New York, NY  10170
Telephone:  212/432-5100
chadj@rgrdlaw.com
jzweig@rgrdlaw.com
aavalos@rgrdlaw.com

Lead Counsel for Lead Plaintiff and the
Class


VANOVERBEKE, MICHAUD &
   TIMMONY, P.C.
THOMAS C. MICHAUD (P42641)
FRANCIS E. JUDD (P68857)
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
tmichaud@vmtlaw.com
fjudd@vmtlaw.com

Local Counsel for Lead Plaintiff and the
Class

## CERTIFICATE OF SERVICE

I, Ellen Gusikoff Stewart, hereby certify that on September 15, 2023, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.


_/s/ Ellen Gusikoff Stewart_
ELLEN GUSIKOFF STEWART