UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | | |
|---|---|---|
| In re HOME POINT CAPITAL INC. SECURITIES LITIGATION | ) ) ) | Civ. No. 4:21-cv-11457-SDK -KGA |

Judge Shalina D. Kumar
Magistrate Judge Kimberly G. Altman

CLASS ACTION

LEAD PLAINTIFF'S MOTION FOR (I) FINAL APPROVAL OF CLASS ACTION SETTLEMENT, (II) APPROVAL OF PLAN OF ALLOCATION, AND (III) FINAL CLASS CERTIFICATION

Lead Plaintiff Abdulaziz Jamal Johar Al-Johar ("Lead Plaintiff") respectfully moves the Court for final approval of the Settlement, approval of the Plan of Allocation, and final certification of the Settlement Class for settlement purposes.  The terms and conditions of the Settlement are set forth in the Stipulation of Settlement (the "Stipulation") (ECF 57).

In support of the motion, Lead Plaintiff relies on the accompanying Memorandum of Law in Support of Lead Plaintiff's Motion for (I) Final Approval of Class Action Settlement, (II) Approval of Plan of Allocation, and (III) Final Class Certification, the Declaration of Jonathan Zweig, Lead Plaintiff's declaration, the Declaration of Ross D. Murray, the Stipulation, all of the prior pleadings and papers in this Litigation, and such additional evidence or argument as may be required by the Court.  Proposed orders will be submitted with Lead Plaintiff's reply submission on or before May 7, 2024.

DATED:  April 9, 2024

Respectfully submitted,

ROBBINS GELLER RUDMAN
 & DOWD LLP
ELLEN GUSIKOFF STEWART
DANIELLE S. MYERS
JUAN CARLOS SANCHEZ

*/s/ Ellen Gusikoff Stewart*
ELLEN GUSIKOFF STEWART

- 1 -

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
dmyers@rgrdlaw.com
jsanchez@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHAD JOHNSON
JONATHAN ZWEIG
ANA AVALOS CUELLAR
420 Lexington Avenue, Suite 1832
New York, NY  10170
Telephone:  212/432-5100
chadj@rgrdlaw.com
jzweig@rgrdlaw.com
aavalos@rgrdlaw.com

Lead Counsel for Lead Plaintiff

VANOVERBEKE, MICHAUD &
  TIMMONY, P.C.
THOMAS C. MICHAUD (P42641)
FRANCIS E. JUDD (P68857)
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com
fjudd@vmtlaw.com

Local Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | |
|---|---|
| In re HOME POINT CAPITAL INC. SECURITIES LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civ. No. 4:21-cv-11457-SDK -KGA<br><br>Judge Shalina D. Kumar<br>Magistrate Judge Kimberly G. Altman<br><br>CLASS ACTION<br><br>MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR (I) FINAL APPROVAL OF CLASS ACTION SETTLEMENT, (II) APPROVAL OF PLAN OF ALLOCATION, AND (III) FINAL CLASS CERTIFICATION |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................1

II.   FACTUAL AND PROCEDURAL HISTORY ...................................................4

III.  THE SETTLEMENT WARRANTS FINAL APPROVAL ...........................4

    A.    Legal Standards for Final Approval of Class Action Settlement..........4

    B.    The Rule 23 and Sixth Circuit Factors Support Approval...................6

        1.    The Settlement Class Was Adequately Represented .................6

        2.    The Arms'-Length Settlement Process Favors Approval...........7

        3.    The Relief Provided to the Settlement Class Is Adequate..........8

            a.    The Complexity, Expense, and Likely Duration of the Litigation....................................................................9

            b.    The Likelihood of Success on the Merits.......................10

        4.    The Stage of Proceedings and Amount of Discovery Engaged in by the Parties Supports Approval ..........................13

        5.    Lead Counsel and Lead Plaintiff Endorse the Settlement ........14

        6.    The Reaction of the Settlement Class Supports Final Approval..................................................................................15

        7.    Public Interest Favors Approval of the Settlement...................16

        8.    Other Rule 23(e)(2) Factors Support Final Approval...............17

IV.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE...............19

V.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED ...........................19

VI.   THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS .......................................................................22

VII.  CONCLUSION.......................................................................................24

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amchem Prods. Inc. v. Windsor*,
521 U.S. 591 (1997)................................................................................21

*Arledge v. Domino's Pizza, Inc.*,
2018 WL 5023950 (S.D. Ohio Oct. 17, 2018) ....................................8

*Armstrong v. Gallia Metro. Hous. Auth.*,
2001 WL 1842452 (S.D. Ohio Apr. 23, 2001) ..................................15

*Bartell v. LTF Club Operations Co.*,
2020 WL 7062834 (S.D. Ohio Aug. 7, 2020) ....................................12

*Brotherton v. Cleveland*,
141 F. Supp. 2d 894 (S.D. Ohio 2001) ..............................................15

*Erica P. John Fund, Inc. v. Halliburton Co.*,
2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ...................................18

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) .............................................................11

*Granada Invs., Inc. v. DWG Corp.*,
962 F.2d 1203 (6th Cir. 1992) .............................................................6

*In re Accredo Health, Inc.*,
2006 U.S. Dist. LEXIS 97621
(W.D. Tenn. Mar. 7, 2006) .................................................................20

*In re Am. Med. Sys. Inc.*,
75 F.3d 1069 (6th Cir. 1996) ........................................................20, 21

*In re Broadwing, Inc. ERISA Litig.*,
252 F.R.D. 369 (S.D. Ohio 2006).......................................................16

*In re Constar Int'l Inc. Sec. Litig.*,
585 F.3d 774 (3d Cir. 2009) ...............................................................21

**Page**

*In re Delphi Corp. Sec. Derivative & "ERISA" Litig.*,
    248 F.R.D. 483 (E.D. Mich. 2008) ......................................................................9

*In re Direct Gen. Corp. Sec. Litig.*,
    2006 WL 2265472 (M.D. Tenn. Aug. 8, 2006).................................................21

*In re Packaged Ice Antitrust Litig.*,
    2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ................................................19

*In re Packaged Ice Antitrust Litig.*,
    322 F.R.D. 276 (E.D. Mich. 2017) ....................................................................7

*In re Se. Milk Antitrust Litig.*,
    2013 WL 2155379 (E.D. Tenn. May 17, 2023) ................................................16

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
    2014 WL 11669877 (E.D. Tenn. Apr. 30, 2014)...............................................24

*In re Tesla Inc. Sec. Litig.*,
    No. 3:18-cv-04865-EMC (N.D. Cal. Feb. 9, 2023)...........................................11

*In re Vivendi Universal, S.A. Sec. Litig.*,
    765 F. Supp. 2d 512 (S.D.N.Y. 2011),
    *aff'd*, 838 F.3d 223 (2d Cir. 2016).....................................................................11

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005)................................................................11

*Karpik v. Huntington Bancshares Inc.*,
    2021 WL 757123 (S.D. Ohio Feb. 18, 2021) ......................................7, 9, 10, 15

*Kritzer v. Safelite Sols., LLC*,
    2012 WL 1945144 (S.D. Ohio May 30, 2012)...................................................15

*N.Y. State Tchrs.' Ret. Sys. v. GMC*,
    315 F.R.D. 226, 236 (E.D. Mich. 2016),
    *aff'd sub nom. Marro v. N.Y. State Tchrs.' Ret. Sys.*,
    2017 WL 6398014 (6th Cir. Nov. 27, 2017) ...............................................*passim*

**Page**

*New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
    234 F.R.D. 627 (W.D. Ky. 2006),
    *aff'd sub nom. Fidel v. Farley*,
    534 F.3d 508 (6th Cir. 2008) ........................................................................9, 22

*Palazzolo v. Fiat Chrysler Autos. N.V.*,
    2019 WL 2957143 (E.D. Mich. June 5, 2019) ....................................................18

*Palm Tran, Inc. Amalgamated Transit Union Loc. 1577 Pension
    Plan v. Credit Acceptance Corp.*,
    2022 WL 17582004 (E.D. Mich. Dec. 12, 2022) .................................................14

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,
    636 F.3d 235 (6th Cir. 2011) ....................................................................10, 15

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) .........................................................................11

*Robinson v. Shelby Cnty. Bd. of Educ.*,
    566 F.3d 642 (6th Cir. 2009) ...............................................................................4

*Ross v. Abercrombie & Fitch Co.*,
    257 F.R.D. 435 (S.D. Ohio 2009).......................................................................20

*Schuh v. HCA Holdings, Inc.*,
    2014 WL 4716231 (M.D. Tenn. Sept. 22, 2014).................................................21

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)............................................................................................16

*UAW v. GMC*,
    497 F.3d 615 (6th Cir. 2007) .....................................................................*passim*

*Wright v. Premier Courier, Inc.*,
    2018 WL 3966253 (S.D. Ohio Aug. 17, 2018) ..............................................5, 14

*Young v. Nationwide Mut. Ins. Co.*,
    693 F.3d 532 (6th Cir. 2012) ...............................................................................6

**Page**

## STATUTES, RULES, AND REGULATIONS

15 U.S.C.
§77k ...........................................................................................................21
§77k(e) ......................................................................................................21
§77z-1(a)(4) ...............................................................................................1
§77z-1(a)(7) ........................................................................................22, 23

Federal Rules of Civil Procedure
Rule 23 ....................................................................................6, 19, 22, 24
Rule 23(a) .................................................................................................20
Rule 23(b) .................................................................................................21
Rule 23(b)(3) ......................................................................................21, 22
Rule 23(c)(2)(B) .................................................................................22, 24
Rule 23(e) ...................................................................................................1
Rule 23(e)(1)(B) .......................................................................................22
Rule 23(e)(2) .....................................................................................4, 5, 17
Rule 23(e)(2)(A) .........................................................................................6
Rule 23(e)(2)(B) .........................................................................................7
Rule 23(e)(2)(C) .........................................................................................8
Rule 23(e)(2)(C)(i) ......................................................................................8
Rule 23(e)(2)(C)(ii) ...................................................................................17
Rule 23(e)(2)(C)(iii) ..................................................................................17
Rule 23(e)(2)(C)(iv) ..................................................................................17
Rule 23(e)(2)(D) .......................................................................................17
Rule 23(e)(3) ...............................................................................................5

## SECONDARY AUTHORITIES

Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2023 Review and Analysis* (Cornerstone Research 2024) ...........................................13

## STATEMENT OF ISSUES PRESENTED

1.     Whether the Court should approve the proposed settlement of this securities class action, which involves payment of $5,000,000 in cash for the benefit of the Settlement Class, as fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e).

2.     Whether the Court should approve the proposed Plan of Allocation as fair and reasonable.

3.     Whether the Court should grant final certification of the Settlement Class pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) for purposes of effectuating the Settlement only.

4883-0085-8545.v2

## STATEMENT OF CONTROLLING AUTHORITY

Pursuant to Local Rule 7.1(d)(2), Lead Plaintiff identifies the following controlling authority for the relief sought:

1.  Federal Rule of Civil Procedure 23

2.  *UAW v. GMC*, 497 F.3d 615 (6th Cir. 2007)

4883-0085-8545.v2

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Abdulaziz Jamal Johar Al-Johar ("Lead Plaintiff") respectfully submits this memorandum in support of his motion for: (i) final approval of the proposed settlement of this action; (ii) approval of the proposed Plan of Allocation; and (iii) final certification of the Settlement Class for settlement purposes.[1]

## I.    INTRODUCTION

After substantial litigation and arm's-length settlement negotiations, Lead Plaintiff and Lead Counsel have achieved a highly favorable proposed settlement of $5,000,000 (the "Settlement") for the benefit of the Settlement Class.    The Settlement was only achieved after a detailed investigation; the drafting and filing of an amended complaint; successfully defeating in part Defendants' motion to dismiss; submitting Lead Plaintiff's class certification motion; obtaining and analyzing documents produced by Defendants and third parties; and participating in arm's-length settlement negotiations under the supervision of Gregory Lindstrom of Phillips ADR.  As a result of these extensive litigation and settlement efforts, Lead

---

[1]    Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation of Settlement dated September 14, 2023 (the "Stipulation") (ECF 57) or in the accompanying Declaration of Jonathan Zweig in Support of Motions for Final Approval of Class Action Settlement, Approval of Plan of Allocation, Final Class Certification, Award of Attorneys' Fees and Expenses, and Award to Lead Plaintiff Pursuant to 15 U.S.C. §77z-1(a)(4) (the "Zweig Declaration" or "Zweig Decl.").  Unless otherwise noted, all internal citations and quotations have been omitted and emphasis has been added.

- 1 -

Plaintiff and Lead Counsel had a thorough understanding of the relative strengths and weaknesses of the Settlement Class's claims and the propriety of settlement.

While Lead Counsel believes Lead Plaintiff's claims – that Defendants made false and misleading statements about Home Point's cost structure in the Offering Documents for its IPO – have significant merit, Defendants adamantly denied liability.  Defendants argued that such statements were not false or misleading because, for example, Home Point had disclosed the extent to which its expenses were variable or fixed, and the Offering Documents contained risk disclosures that addressed the potential for rising costs.   Zweig Decl., ¶7.   Defendants also challenged the causal link between the corrective disclosure and the decline in Home Point's stock price, arguing that it was caused by unrelated factors.  If Defendants were successful as to these and other liability and damages arguments at summary judgment or trial, the Settlement Class would receive no recovery at all, or damages would be significantly reduced.   Lead Counsel also considered Home Point's financial viability and ability to fund a recovery, as the Company entered into transactions to sell its assets and wind down its operations in early 2023.  *Id.* at ¶8.

Lead Counsel, with years of experience in prosecuting securities fraud class actions like this one, submits that the Settlement, which recovers between 10 and 40 percent of the estimated potentially recoverable damages based on various factors, is an excellent result.  Moreover, Lead Plaintiff fully supports the Settlement.  The

- 2 -

Settlement Class's reaction to date similarly reflects approval of the Settlement. Notice was provided to potential Settlement Class Members pursuant to the Preliminary Approval Order, ECF 59 (the "Preliminary Approval Order"), commencing January 16, 2024. *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), submitted herewith. While the April 23, 2024 deadline to object to the Settlement and Plan of Allocation has not yet passed, to date no objections to the Settlement or Plan of Allocation have been received. Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement.

Lead Plaintiff also requests that the Court grant final certification of the Settlement Class and approve the proposed Plan of Allocation, which was detailed in the Notice of Pendency and Proposed Settlement of Class Action ("Notice"). This Plan governs how claims will be calculated and how settlement proceeds will be distributed among Authorized Claimants. The Plan of Allocation calculates Recognized Losses by taking into account: (a) the statutory scheme and damages model for the claims alleged; (b) when and at what price the shares were purchased or acquired; (c) whether, when, and at what price the shares were sold; and (d) whether the shares were held at the close of trading on particular dates. Zweig Decl., ¶¶15-16. To date, no objections have been filed to the Plan.

- 3 -

## II.    FACTUAL AND PROCEDURAL HISTORY

The Zweig Declaration is an integral part of this submission, and for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Litigation and Lead Counsel's efforts on behalf of the Settlement Class; the negotiations leading to the Settlement; and the risks and uncertainties of continued litigation.

## III.   THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.    Legal Standards for Final Approval of Class Action Settlement

Federal Rule of Civil Procedure 23(e)(2) requires judicial approval for any settlement of class action claims and provides that a class action settlement should be approved if the court finds it "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  It is well settled in the Sixth Circuit that "federal policy favor[s] settlement of class actions."  *UAW v. GMC*, 497 F.3d 615, 632 (6th Cir. 2007).  "'Settlement agreements should therefore be upheld whenever equitable and policy considerations so permit.'"  *Robinson v. Shelby Cnty. Bd. of Educ.*, 566 F.3d 642, 648 (6th Cir. 2009).

Rule 23(e)(2) provides the Court with four specific factors to consider when determining whether a proposed settlement is "fair, reasonable, and adequate:"

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

- 4 -

(C)     the relief provided for the class is adequate, taking into account:

    (i)     the costs, risks, and delay of trial and appeal;

    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  The Court considered these factors in connection with its consideration of preliminary approval of the Settlement and preliminarily found that each had been met.  *See* ECF 59.  Now that notice of the proposed Settlement has been provided to the Settlement Class, and no objections to the Settlement have been filed, the Court should confirm its findings in the Preliminary Approval Order.

Courts in the Sixth Circuit have also considered the following factors in determining whether a class action settlement should be approved:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW*, 497 F.3d at 631.

In reviewing a proposed class action settlement, district courts have "'wide discretion in assessing the weight and applicability'" of the relevant factors. *Wright*

*v. Premier Courier, Inc.*, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018)

(quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir.

1992)).  In considering these factors, the task of the court "is not to decide whether

one side is right or even whether one side has the better of these [underlying legal

and factual] arguments. . . .  The question rather is whether the parties are using

settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d

at 632.

> **B.    The Rule 23 and Sixth Circuit Factors Support Approval**
>
> **1.    The Settlement Class Was Adequately Represented**

Rule 23(e)(2)(A) requires the Court to consider whether the "class

representatives and class counsel have adequately represented the class."  Fed. R.

Civ. P. 23(e)(2)(A).  The Sixth Circuit evaluates two criteria to determine whether

adequacy is met: the representative must (i) "'have common interests with unnamed

members of the class,'" and (ii) be willing to "'vigorously prosecute the interests of

the class through qualified counsel.'" *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d

532, 543 (6th Cir. 2012).

These requirements have easily been met here.  Lead Plaintiff's claims are

entirely typical of the claims of the Settlement Class.  Additionally, as detailed in

Lead Plaintiff's declaration, Lead Plaintiff was involved in each stage of the

Litigation, and worked closely with Lead Counsel to achieve the best possible result

for the Settlement Class. *See* Declaration of Abdulaziz Jamal Johar Al-Johar ("Al-Johar Decl."), ¶¶7-13, submitted herewith.

Likewise, Lead Counsel has adequately represented the Settlement Class. Lead Counsel is highly experienced in securities fraud litigation, with a long and successful track record representing investors in cases in courts throughout the country. Defendants presented a vigorous defense to Lead Plaintiff's claims. *See generally* Zweig Decl. In spite of these challenges, Lead Counsel obtained an excellent and hard fought recovery for the Settlement Class. Accordingly, this factor is easily satisfied and warrants final approval. *See UAW*, 497 F.3d at 626 (representation was adequate because class counsel "was willing to, and indeed did, commit substantial 'resources . . . to represent[] the class'").

## 2. The Arms'-Length Settlement Process Favors Approval

Rule 23(e)(2)(B) and the first *UAW* factor, which analyze whether the Settlement was reached at arm's length and without fraud or collusion, also support approval. "'Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.'" *In re Packaged Ice Antitrust Litig.*, 322 F.R.D. 276, 291 (E.D. Mich. 2017); *see also Karpik v. Huntington Bancshares Inc.*, 2021 WL 757123, at *4 (S.D. Ohio Feb. 18, 2021). "Courts consistently approve class action settlements reached through arms-length negotiations after meaningful discovery." *Id.*

- 7 -

Here, the proposed Settlement was reached after hard-fought litigation, with both sides vigorously advocating their respective positions.  Before engaging in mediation with Gregory Lindstrom of Phillips ADR, a highly experienced mediator, the parties engaged in document discovery, and were further informed by the complete briefing on Defendants' motion to dismiss, the Court's detailed decision on that motion, and Lead Plaintiff's class certification motion.  Zweig Decl., ¶10. The settlement negotiations themselves were extensive, and included the exchange of mediation briefs and supporting evidence, an in-person mediation session, and further discussions thereafter through Mr. Lindstrom.  *Id.*, ¶¶26-27.  In those discussions, Lead Counsel insisted on, and obtained, the opportunity to receive and review critical documents from Home Point's auditor before agreeing to a settlement.  *Id.*, ¶9.  As such, the Settlement warrants approval given that the "'participation of an independent mediator . . . virtually insures that the negotiations were conducted at arm's length and without collusion.'"  *Arledge v. Domino's Pizza, Inc.*, 2018 WL 5023950, at *2 (S.D. Ohio Oct. 17, 2018).

### 3.   The Relief Provided to the Settlement Class Is Adequate

Under Rule 23(e)(2)(C), the Court must consider whether the relief provided for the Settlement Class is adequate, taking into account "the costs, risks, and delay of trial and appeal" and other factors.  Fed. R. Civ. P. 23(e)(2)(C)(i).  This factor essentially incorporates the second and fourth *UAW* factors: (i) the complexity,

- 8 -

expense, and likely duration of the litigation; and (ii) the likelihood of success on the merits. Each of these factors supports approval.

### a.   The Complexity, Expense, and Likely Duration of the Litigation

"Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement." *In re Delphi Corp. Sec. Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008). Most class actions are "'inherently complex'" and "'[s]ettlement avoids the costs, delays, and multitude of other problems associated with them.'" *Karpik,* 2021 WL 757123, at *4. Indeed, courts have consistently recognized that "'[s]ecurities class actions are often "difficult and . . . uncertain."'" *See, e.g.*, *New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006) (ellipsis in original), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008).

There is no doubt that this Litigation involves contested, complex issues relating to falsity, materiality, due diligence, causation, and damages. For instance, whether Defendants made material misrepresentations and omissions was vigorously challenged throughout the case. While the Court had denied Defendants' motion to dismiss with respect to several of Defendants' falsity challenges, the Court's ruling did not mean that Lead Plaintiff would necessarily succeed in proving falsity at summary judgment or trial. Additionally, Defendants aggressively argued

- 9 -

that Home Point's stock price decline was primarily due to factors unrelated to the alleged misrepresentations and omissions, such as rising interest rates and intense competition with other wholesale mortgage lenders, Zweig Decl., ¶7, which could have significantly impacted the recoverable damages in the case.  Each of the contested issues required consideration of complex issues and voluminous evidence, including opinions from economic experts.  A "battle of the experts" is invariably costly, with uncertain results.   Further, Defendants could have sought an interlocutory appeal of any class certification order under Rule 23(f), which could delay the ultimate resolution of this matter.  In short, at the time the Settlement was reached, considerable work remained before the Settlement Class would have been in a position to obtain judgment on the merits, and the complexity of these issues made victory at summary judgment or trial far from assured.

### b.      The Likelihood of Success on the Merits

"'The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits.  The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured.'" *Karpik*, 2021 WL 757123, at *5 (quoting *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011)).  In other words, when considering this factor, the Court must balance the likelihood of success on the merits against the relief offered in the settlement.  *UAW*, 497 F.3d at 631.

- 10 -

Lead Plaintiff believes the evidence establishes that Defendants made material misrepresentations and omissions about Home Point's cost structure in its Offering Documents, and that as a result, Lead Plaintiff and the Settlement Class suffered damages from their purchases of Home Point stock. Nevertheless, there was no guarantee he would prevail at trial. "Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005).[2]

Here, as detailed in the Zweig Declaration, there were numerous potential defenses available to Defendants that could reduce, or preclude entirely, any recovery by the Settlement Class. Zweig Decl., ¶¶7-8. Defendants have maintained that the evidence would establish at summary judgment or trial that none of their statements about the Company's expenses were materially false or misleading; that

---

[2]   *See, e.g.*, *In re Tesla Inc. Sec. Litig.*, No. 3:18-cv-04865-EMC, ECF 676 (N.D. Cal. Feb. 9, 2023) (jury verdict in favor of defendants despite summary judgment in favor of plaintiffs on certain claims); *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (vacating $2.46 billion judgment against securities fraud defendants and remanding for a new trial on limited issues); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (reversal on loss causation grounds of $81 million jury verdict in favor of plaintiff class against an accounting firm and judgment entered for defendant); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512 (S.D.N.Y. 2011) (declining to enter judgment on jury verdict in favor of plaintiff class and modifying class definition after intervening change in Supreme Court precedent), *aff'd*, 838 F.3d 223 (2d Cir. 2016).

- 11 -

Defendants disclosed to investors in the Offering Documents the extent to which the expenses were fixed or variable; that Home Point adequately warned of the potential for rising costs; that the alleged misstatements amount to puffery; that the price declines in Home Point stock were caused not by the alleged misstatements but by unrelated factors, such as rising interest rates and competition among wholesale mortgage lenders; and that much of the decline in Home Point's stock price took place prior to the alleged disclosure about the Company's costs, potentially limiting damages. Zweig Decl., ¶7.

Lead Counsel was fully informed of the strengths and weaknesses of Lead Plaintiff's case, including the many complicated and nuanced legal and economic issues that would have to be resolved in Lead Plaintiff's favor in order to achieve a successful result. In short, continued litigation would be hard fought, and expensive, and a positive result was far from assured. *See Bartell v. LTF Club Operations Co.*, 2020 WL 7062834, at *4 (S.D. Ohio Aug. 7, 2020) ("In summary, continued litigation in the face of strong opposition and the 'substantial ground for disagreement' that exists as to the merits of Plaintiff's claims creates substantial risk to the [Settlement] Class. When balanced against the substantial benefits provided, this factor weighs in favor of approving the proposed Settlement.").

Despite these risks, Lead Plaintiff obtained a substantial recovery. The $5 million Settlement represents between 10 and 40 percent of the estimated

recoverable damages, representing a premium to the median percentage recovery for all securities cases with only Securities Act claims between 2014-2023, which was 7.5%.   *See* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2023 Review and Analysis* at 9, fig. 7 (Cornerstone Research 2024).  *See* Zweig Decl., ¶11 (estimating maximum recoverable damages of $12 million to $50 million).   Accordingly, the proposed Settlement is an excellent result for the Settlement Class and is certainly within a fair and adequate range.

### 4.   The Stage of Proceedings and Amount of Discovery Engaged in by the Parties Supports Approval

"The relevant inquiry with respect to this factor is whether the plaintiff has obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement."  *N.Y. State Tchrs.' Ret. Sys. v. GMC*, 315 F.R.D. 226, 236 (E.D. Mich. 2016), *aff'd sub nom. Marro v. N.Y. State Tchrs.' Ret. Sys.*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).  Here, Lead Counsel had a thorough understanding of the strengths and weaknesses of Lead Plaintiff's claims.  During the Litigation, Lead Counsel had, among other things:

- researched and drafted the Complaint;

- opposed and defeated in part Defendants' motion to dismiss;

- moved for class certification;

- engaged in fact discovery, including reviewing and analyzing thousands pages of documents produced by Defendants and third parties, which included Home Point's relevant internal management

- 13 -

presentations, detailed records of Home Point's expenses, and supporting documentation and analysis from Home Point's auditor;[3]

- consulted with two experts: Lead Counsel's in-house forensic accountant, and Lead Counsel's in-house damages expert;

- engaged in settlement negotiations with Gregory Lindstrom of Phillips ADR, a well-respected mediator; and

- assessed the risks of prevailing on Lead Plaintiff's claims at summary judgment and trial, the amount of damages to be awarded, and the Settlement Class's ability to prevail on any subsequent appeals.

*See generally*, Zweig Decl., ¶¶4, 13-39.

By the time the Settlement was reached, Lead Plaintiff and Lead Counsel "had sufficient information to evaluate the strengths and weaknesses of the case and the merits of the Settlement," *GMC*, 315 F.R.D. at 237, and reached the well-informed decision to enter into this Settlement. Accordingly, this factor supports approval of the Settlement.

### 5.    Lead Counsel and Lead Plaintiff Endorse the Settlement

In assessing the fairness of a proposed settlement, courts give deference to counsel's recommendation for approval. *Wright*, 2018 WL 3966253, at *5 ("'The court should defer to the judgment of experienced counsel who has competently

---

[3]    *Cf. Palm Tran, Inc. Amalgamated Transit Union Loc. 1577 Pension Plan v. Credit Acceptance Corp.*, 2022 WL 17582004, at *4 (E.D. Mich. Dec. 12, 2022) (Even "'the absence of formal discovery is not an obstacle to settlement approval so long as the parties and the Court have adequate information in order to evaluate the relative position of the parties.'").

- 14 -

evaluated the strength of his proofs.'"); *see also Kritzer v. Safelite Sols., LLC*, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012). This is especially true where, as here, the stage of the proceedings indicates that counsel and the court are fully capable of evaluating the merits of a plaintiff's case and the probable course of future litigation. *See Armstrong v. Gallia Metro. Hous. Auth.*, 2001 WL 1842452, at *3-*4 (S.D. Ohio Apr. 23, 2001).

Here, as a result of the settlement evaluation process, Lead Counsel carefully considered and evaluated the relevant legal authorities and evidence gathered to support the claims asserted against Defendants; the likelihood of prevailing on these claims; and the risk, expense, and duration of continued litigation. Based on these considerations, Lead Counsel concluded that the Settlement is not only fair and reasonable but is a very favorable result for the Settlement Class. Zweig Decl., ¶12; *Karpik*, 2021 WL 757123, at *6. Likewise, Lead Plaintiff approves the Settlement. *See* Al-Johar Decl., ¶15. "Their support also favors approval." *Karpik*, 2021 WL 757123, at *6. Accordingly, this factor supports final approval.

### 6. The Reaction of the Settlement Class Supports Final Approval

To further support approval of a settlement, courts have also looked to the reaction of the class. *Poplar Creek*, 636 F.3d at 244; *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001). "The lack of objections by class members in relation to the size of the class highlights the fairness of the settlements to

- 15 -

unnamed class members and supports approval of the settlements." *In re Se. Milk Antitrust Litig.*, 2013 WL 2155379, at \*6 (E.D. Tenn. May 17, 2023). Pursuant to the Preliminary Approval Order, the Claims Administrator has disseminated over 9,900 Notices to potential Settlement Class Members. To date, there have been no objections to the Settlement. Thus, this factor favors approval of the Settlement.

### 7.   Public Interest Favors Approval of the Settlement

The Supreme Court has repeatedly recognized "that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions," *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007), and "'there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are "notoriously difficult and unpredictable" and settlement conserves judicial resources.'" *GMC*, 315 F.R.D. at 241-42. The Settlement provides $5,000,000 in cash, plus interest, and puts an end to the Litigation, which absent settlement would have continued in this Court and (possibly) in the Sixth Circuit. Thus, the Settlement furthers public policy by conserving judicial resources. *See In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 376 (S.D. Ohio 2006) ("[T]here is certainly a public interest in settlement of disputed cases that require substantial federal judicial resources to supervise and resolve.").

### 8.      Other Rule 23(e)(2) Factors Support Final Approval

Rule 23(e)(2) also requires consideration of: (i) the effectiveness of the proposed method of distributing relief to the class, including the method of processing class members' claims; (ii) the terms of any proposed award of attorneys' fees, including timing of payment; (iii) any agreement made in connection with the proposed settlement; and (iv) the equitable treatment of class members.  *See* Fed. R. Civ. P. 23(e)(2)(C)(ii), (iii), & (iv); Fed. R. Civ. P. 23(e)(2)(D).   Each of these additional considerations also supports final approval of the Settlement.

*First*, the methods for processing Settlement Class Members' claims and distributing relief to eligible claimants are well-established and effective.   The Court-appointed Claims Administrator will review and process the claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any deficiencies in their claims or request the Court review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund per the proposed Plan of Allocation.   *See, e.g.*, *GMC*, 315 F.R.D. at 233-34, 245 (approving settlement with a nearly identical distribution process).

*Second*, as discussed in the accompanying Fee Memorandum, counsel are applying for an award of 30% of the common fund as compensation for the services they rendered on behalf of the Settlement Class, as well as payment of litigation costs and expenses.   The proposed attorneys' fees are reasonable in light of the work

- 17 -

performed and the results obtained, and a 30% award is consistent with attorneys' fee percentages that courts have approved in similar cases. *See, e.g.*, *Palazzolo v. Fiat Chrysler Autos. N.V.*, 2019 WL 2957143, at *1 (E.D. Mich. June 5, 2019) (awarding 30% of $14,750,000 settlement in securities class action, finding award to be "fair and reasonable and consistent with awards in similar cases"). Notably, approval of the requested fees is separate from consideration of approval of the Settlement, and the Settlement may not be terminated based on any ruling on attorneys' fees. *See* Stipulation, ECF 57, ¶6.4.

*Third*, the Settling Parties entered into a confidential agreement establishing conditions under which Home Point may terminate the Settlement if a certain threshold of Settlement Class Members exclude themselves. *Id.*, ¶7.3. This type of agreement is a standard provision in securities class action settlements and is entirely consistent with a fair settlement. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *5 (N.D. Tex. Apr. 25, 2018) (approving settlement with similar confidential agreement).

*Fourth*, under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, their, or its *pro rata* share of the Net Settlement Fund based on their Recognized Claim as calculated by the Plan of Allocation.

Accordingly, each relevant factor supports final approval of the Settlement.

- 18 -

## IV.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

The standard for approval of the Plan of Allocation of settlement proceeds is the same as for the Settlement itself.  Namely, it must be fair, reasonable, and adequate.  *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *15 (E.D. Mich. Dec. 13, 2011).  """Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable.""" *Id.*

Here, the proposed Plan of Allocation, which was developed in consultation with Lead Plaintiff's in-house damages expert, is fair, reasonable, and adequate.  The Plan of Allocation provides for the distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based on their recognized loss.  Zweig Decl., ¶¶13-17.  The Plan of Allocation ensures that the Net Settlement Fund will be fairly and equitably distributed to those who have compensable losses.  Moreover, the Plan of Allocation was set forth in the Notice and, to date, there have been no objections to the Plan of Allocation.  Thus, the Plan of Allocation is fair and reasonable and should be approved.

## V.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Because class certification has not yet been formally ruled on, it is necessary for the Court to certify a class pursuant to Rule 23 prior to approving the proposed Settlement.  In certifying a class for purposes of settlement, courts are afforded broad

discretion.  *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).  Here, all the requirements for class certification are met.[4]

The four Rule 23(a) prerequisites to class certification – (a) numerosity; (b) commonality; (c) typicality; and (d) adequacy of representation – are satisfied.  First, numerosity is satisfied in cases involving nationally traded securities such as Home Point's common stock.  *In re Accredo Health, Inc.*, 2006 U.S. Dist. LEXIS 97621, at *17 (W.D. Tenn. Mar. 7, 2006).  Second, commonality exists where, as here, all Settlement Class Members purchased Home Point common stock subject to the same alleged misrepresentations and omissions.  *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 442 (S.D. Ohio 2009).   Third, typicality is satisfied because Lead Plaintiff suffered losses following the corrective disclosure, as the other Settlement Class Members did.  *Am. Med. Sys.*, 75 F.3d at 1082.  Fourth, Lead Plaintiff is an adequate representative because he has no conflicts with the other Settlement Class Members, and has been actively involved in the case through frequent

---

[4]   The Court preliminarily certified the Settlement Class in the Preliminary Approval Order.  ECF 59, ¶2.  Nothing has changed since that time which would require a different result here, and Lead Plaintiff respectfully incorporates herein his arguments in support of class certification in the Memorandum of Law in Support of Unopposed Motion for (I) Preliminary Approval of Settlement, (II) Class Certification, and (III) Approval of Notice to the Settlement Class.  ECF 56, §V.  Lead Plaintiff further incorporates the arguments in his motion for class certification.  ECF 49.

communications with highly-qualified Lead Counsel.  *Id.* at 1083; *In re Direct Gen. Corp. Sec. Litig.*, 2006 WL 2265472, at *4 (M.D. Tenn. Aug. 8, 2006).

A proposed class action must also satisfy one of the tests of Rule 23(b).  Lead Plaintiff brings this Litigation under Rule 23(b)(3): predominance of common questions of fact or law and superiority of the class action device as the method of adjudication.   The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," and is "readily met" in securities class actions.  *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623, 625 (1997).   Here, common questions of law and fact predominate over individual questions because the alleged misstatements and omissions affected all Members of the Settlement Class in the same manner (*i.e.*, through public statements to the market).  Defendants' liability turns on common issues, and damages are measurable using a common methodology across the Settlement Class by means of statutory formula.   15 U.S.C. §77k(e).   Courts have routinely held that common issues predominate in cases like this one brought under Section 11 of the Securities Act. *See, e.g.*, *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 784-86 (3d Cir. 2009); *Schuh v. HCA Holdings, Inc.*, 2014 WL 4716231, at *7-*9 (M.D. Tenn. Sept. 22, 2014).  Additionally, the class action mechanism is the superior method of resolving Settlement Class Members' claims efficiently, in one suit and one forum, rather than in separate suits.  *Amchem*, 521 U.S. at 615.

In short, because common questions predominate over any individual issues and the class action device is far superior to any other means available to resolve Settlement Class Members' claims, the requirements of Rule 23(b)(3) are met.

## VI.   THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS

Rule 23(e)(1)(B) requires that notice of the proposed settlement be given "in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).  Rule 23(c)(2)(B) further requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  In addition to the requirements of Rule 23, the Constitution's Due Process Clause also guarantees unnamed class members the right to notice of certification or settlement. In securities class actions, the notice must contain the information outlined in Rule 23(c)(2)(B) and the PSLRA.  *See* 15 U.S.C. §77z-1(a)(7).  A notice of settlement satisfies due process when it is "'reasonably calculated to reach interested parties.'" *Farley*, 534 F.3d at 514.  The notice plan utilized here, as set forth in the Preliminary Approval Order, easily meets these requirements.

In accordance with the Preliminary Approval Order, the Claims Administrator has disseminated over 9,900 copies of the Court-approved Notice to potential Settlement Class Members and nominees.  *See* Murray Decl., ¶¶5-11.  The Claims

- 22 -

Administrator also caused the Summary Notice to be published in *The Wall Street Journal* and transmitted over *Business Wire*. *Id.*, ¶12.

The Claims Administrator also provided the Court-approved Notice online through the Settlement website. *Id.*, ¶14. The Notice provides the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement, as required by the PSLRA. The Notice provides, among other things: (i) an explanation of the nature of the Litigation and the claims asserted; (ii) the definition of the Settlement Class; (iii) the basic terms of the Settlement, including the amount and releases; (iv) the Plan of Allocation and estimated average per share recovery; (v) dates and deadlines for certain Settlement-related events; (vi) the reasons the parties are proposing the Settlement; (vii) the maximum amount of attorneys' fees and expenses that will be sought; (viii) a description of Settlement Class Members' right to request exclusion or to object to the Settlement, the Plan of Allocation, and/or attorneys' fees or expenses; (ix) notice of the binding effect of a judgment on Settlement Class Members; and (x) how to obtain additional information about the Litigation, by contacting Lead Counsel or the Claims Administrator, or visiting the Settlement website. *See* Fed. R. Civ. P. 23(c)(2)(B); 15 U.S.C. §77z-1(a)(7). The Notice also provides recipients with information on how to submit a Proof of Claim and Release. *See* Murray Decl., Ex. A.

Lead Plaintiff and Lead Counsel have satisfied all of the elements of the Court-approved notice plan.  *See generally* Murray Decl.   That notice plan constitutes "the best notice . . . practicable under the circumstances" and satisfies the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and the PSLRA.  *See* Fed. R. Civ. P. 23(c)(2)(B); *see also GMC*, 315 F.R.D. at 242 (finding similar notice plan "satisfied Rule 23's notice requirement"); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 11669877, at *3 (E.D. Tenn. Apr. 30, 2014) (finding that dissemination of notice by first class mail and posting on a settlement website satisfied the requirements of Rule 23).

## VII.  CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court: (i) approve the Settlement as fair, reasonable, and adequate; (ii) approve the Plan of Allocation as fair and reasonable; and (iii) certify the Settlement Class for settlement purposes.

DATED:  April 9, 2024                    Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART
DANIELLE S. MYERS
JUAN CARLOS SANCHEZ

*/s/ Ellen Gusikoff Stewart*
ELLEN GUSIKOFF STEWART

- 24 -

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
dmyers@rgrdlaw.com
jsanchez@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHAD JOHNSON
JONATHAN ZWEIG
ANA AVALOS CUELLAR
420 Lexington Avenue, Suite 1832
New York, NY  10170
Telephone:  212/432-5100
chadj@rgrdlaw.com
jzweig@rgrdlaw.com
aavalos@rgrdlaw.com

Lead Counsel for Lead Plaintiff

VANOVERBEKE, MICHAUD &
  TIMMONY, P.C.
THOMAS C. MICHAUD (P42641)
FRANCIS E. JUDD (P68857)
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com
fjudd@vmtlaw.com

Local Counsel for Lead Plaintiff

- 25 -

<u>CERTIFICATE OF SERVICE</u>

I, Ellen Gusikoff Stewart, hereby certify that on April 9, 2024, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

*/s/ Ellen Gusikoff Stewart*
ELLEN GUSIKOFF STEWART