UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | | |
|---|---|---|
| In re HOME POINT CAPITAL INC. SECURITIES LITIGATION | ) ) ) ) | Civ. No. 4:21-cv-11457-SDK -KGA |

Judge Shalina D. Kumar
Magistrate Judge Kimberly G. Altman

CLASS ACTION

LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARD TO LEAD PLAINTIFF PURSUANT TO 15 U.S.C. §77z-1(a)(4)

4860-9490-5524.v2

Lead Counsel, Robbins Geller Rudman & Dowd LLP ("Lead Counsel"), respectfully moves this Court for entry of an order: (a) awarding attorneys' fees; (b) paying litigation costs and expenses incurred by Lead Counsel; and (c) awarding Lead Plaintiff compensation for the time and expenses he incurred in representing the Settlement Class in this Litigation.

In support of its motion, Lead Counsel relies on the accompanying Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C. §77z-1(a)(4); the Declaration of Jonathan Zweig; the Declaration of Ross D. Murray; and the Declaration of Lead Plaintiff.

A proposed order will be submitted with Lead Counsel's reply submission on or before May 7, 2024.

DATED:  April 9, 2024          Respectfully submitted,

ROBBINS GELLER RUDMAN
 & DOWD LLP
ELLEN GUSIKOFF STEWART
DANIELLE S. MYERS
JUAN CARLOS SANCHEZ


                    /s/ Ellen Gusikoff Stewart
                  ELLEN GUSIKOFF STEWART

- 1 -

4860-9490-5524.v2

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
dmyers@rgrdlaw.com
jsanchez@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHAD JOHNSON
JONATHAN ZWEIG
ANA AVALOS CUELLAR
420 Lexington Avenue, Suite 1832
New York, NY  10170
Telephone:  212/432-5100
chadj@rgrdlaw.com
jzweig@rgrdlaw.com
aavalos@rgrdlaw.com

Lead Counsel for Lead Plaintiff

VANOVERBEKE, MICHAUD &
  TIMMONY, P.C.
THOMAS C. MICHAUD (P42641)
FRANCIS E. JUDD (P68857)
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com
fjudd@vmtlaw.com

Local Counsel for Lead Plaintiff

- 2 -

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | | |
|---|---|---|
| In re HOME POINT CAPITAL INC. SECURITIES LITIGATION | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civ. No. 4:21-cv-11457-SDK-KGA<br><br>Judge Shalina D. Kumar<br>Magistrate Judge Kimberly G. Altman<br><br>CLASS ACTION<br><br>MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARD TO LEAD PLAINTIFF PURSUANT TO 15 U.S.C. §77z-1(a)(4) |

4886-4190-5841.v5

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ..................................................................1

II.   AWARD OF ATTORNEYS' FEES ........................................................5

    A.    Lead Counsel Is Entitled to a Fee from the Common Fund
          Reflecting the Result Achieved and the Work Done ...........................5

    B.    The Court Should Apply the Percentage Approach in Awarding
          Fees..............................................................................................6

    C.    The Requested 30% Fee Is Consistent with Awards in Common
          Fund Cases in This District and the Sixth Circuit................................7

    D.    The Requested Fee Is Reasonable.........................................................9

          1.    The Value of the Benefit Rendered to the Settlement
               Class Supports the Requested Fee .............................................10

          2.    Society's Stake in Rewarding Attorneys Who Enforce
               Securities Laws Supports the Requested Fee ...........................11

          3.    The Contingent Nature of Counsel's Representation
               Supports the Requested Fee.......................................................12

          4.    The Complexity of the Litigation Supports the Requested
               Fee.............................................................................................16

          5.    Lead Counsel's Diligent Prosecution of the Litigation
               and the Value of Its Services Supports the Requested Fee.......17

          6.    The Quality of Representation Supports the Requested
                Fee.............................................................................................19

    E.    Class Member Reaction .....................................................................20

III.   LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE
     NECESSARILY INCURRED TO ACHIEVE THE BENEFIT
     OBTAINED.............................................................................................21

- i -

**Page**

IV. THE REQUESTED AWARD TO LEAD PLAINTIFF IS REASONABLE ..................................................................................................22

V. CONCLUSION.................................................................................................25

4886-4190-5841.v5

# TABLE OF AUTHORITIES

**Page**

## CASES

*Air Prods. & Chems., Inc. v. Airgas, Inc.*,
16 A.3d 48 (Del. Ch. 2011) ...............................................................................15

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) ...........................................................................15

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)............................................................................................11

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985)............................................................................................11

*Blum v. Stenson*,
465 U.S. 886 (1984).............................................................................................8

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980).............................................................................................5

*Bowling v. Pfizer, Inc.*,
922 F. Supp. 1261 (S.D. Ohio 1996),
*aff'd*, 102 F.3d 777 (6th Cir. 1996)....................................................................7

*Brotherton v. Cleveland*,
141 F. Supp. 2d 907 (S.D. Ohio 2001) ...............................................................9

*Carr v. Guardian Healthcare Holdings, Inc.*,
2022 WL 501206 (S.D. Ohio Jan. 19, 2022)..............................................*passim*

*Cheng Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ...................................................10

*Cosby v. KPMG LLP*,
2022 WL 4129703 (E.D. Tenn. July 12, 2022) .................................................23

*Grae v. Corrs. Corp. of Am.*,
2021 WL 5234966 (M.D. Tenn. Nov. 8, 2021)..................................................23

4886-4190-5841.v5

**Page**

*Hubbard v. BankAtlantic Bancorp., Inc.*,
688 F.3d 713 (11th Cir. 2012) ..................................................................15

*In re Apple Comput. Sec. Litig.*,
1991 WL 238298 (N.D. Cal. Sept. 6, 1991)........................................16

*In re Caraco Pharm. Lab'ys, Ltd. Sec. Litig.*,
2013 WL 3213328 (E.D. Mich. June 26, 2013) ...................................24

*In re Cardinal Health Inc. Sec. Litig.*,
528 F. Supp. 2d 752 (S.D. Ohio 2007)....................................*passim*

*In re Charter Commc'ns, Inc.*,
2005 U.S. Dist. LEXIS 14772
(E.D. Mo. June 30, 2005)..................................................................21

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) ...............................................19, 20

*In re Flint Water Cases*,
583 F. Supp. 3d 911 (E.D. Mich. 2022) ...............................10, 12, 13

*In re Flint Water Cases*,
63 F.4th 486 (6th Cir. 2023) .................................................*passim*

*In re Homestore Inc. Sec. Litig.*,
No. 01-cv-11115 (C.D. Cal. 2011) ..................................................15

*In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*,
2009 WL 1473975 (S.D. Ohio May 27, 2009)....................................9

*In re Nationwide Fin. Servs. Litig.*,
2009 WL 8747486 (S.D. Ohio Aug. 19, 2009) ...............................20

*In re Oracle Corp. Sec. Litig.*,
2009 WL 1709050 (N.D. Cal. June 19, 2009),
*aff'd*, 627 F.3d 376 (9th Cir. 2010)..................................................15

*In re Regions Morgan Keegan Sec.*,
2013 WL 12110279 (W.D. Tenn. Aug. 6, 2013)...............................18

4886-4190-5841.v5

**Page**

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005) ...................................................................21

*In re Se. Milk Antitrust Litig.*,
   2013 WL 2155387 (E.D. Tenn. May 17, 2013) .................................7, 9, 13, 21

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
   2014 WL 2946459 (E.D. Tenn. June 30, 2014) ................................................7, 8

*JDS Uniphase Corp. Sec. Litig.*,
   2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ...................................................15

*Miller v. Thane Int'l Inc.*,
   No. 02-cv-01156 (C.D. Cal. 2005) ....................................................................15

*Mo. v. Jenkins by Agyei*,
   491 U.S. 274 (1989)..............................................................................................7

*Moulton v. U.S. Steel Corp.*,
   581 F.3d 344 (6th Cir. 2009) ...............................................................................9

*New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*,
   234 F.R.D. 627 (W.D. Ky. 2006), *aff'd sub nom*
   *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) .............................................16, 21

*N.Y. State Tchrs.' Ret. Sys. v. GMC*,
   315 F.R.D. 226 (E.D. Mich. 2016),
   *aff'd sub nom. Marro v. N.Y. State Tchrs.' Ret. Sys.*,
   2017 WL 6398014 (6th Cir. Nov. 27, 2017) ..........................................6, 12, 16

*Palazzolo v. Fiat Chrysler Autos. N.V.*,
   2019 WL 2957143 (E.D. Mich. 2019).............................................................8, 22

*Palm Tran, Inc. Amalgamated Transit Union Loc. 1577*
   *Pension Plan v. Credit Acceptance Corp.*,
   2022 WL 17582004 (E.D. Mich. Dec. 12, 2022) ...........................................8, 22

*Pompano Beach Police & Firefighters' Ret. Sys. v.*
   *Las Vegas Sands Corp.*,
   732 F. App'x 543 (9th Cir. 2018)......................................................................15

- v -

**Page**

*Ramey v. Cincinnati Enquirer, Inc.*,
   508 F.2d 1188 (6th Cir. 1974) ...................................................................9, 10

*Ranney v. Am. Airlines*,
   2016 WL 471220 (S.D. Ohio Feb. 8, 2016) .................................................10, 17

*Rawlings v. Prudential-Bache Props., Inc.*,
   9 F.3d 513 (6th Cir. 1993) .........................................................................5, 6, 9

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) .......................................................................15

*Schuh v. HCA Holdings, Inc.*,
   2016 WL 10570957 (M.D. Tenn. Apr. 14, 2016) ...............................................8

*Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*,
   2015 WL 1498888 (E.D. Mich. Mar. 31, 2015).................................................8

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007).........................................................................................11

*Thacker v. Chesapeake Appalachia, L.L.C.*,
   695 F. Supp. 2d 521 (E.D. Ky. 2010),
   *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake
   Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011)...............................................9

*Zimmerman v. Diplomat Pharm., Inc.*,
   2019 WL 3942483 (E.D. Mich. Aug. 20, 2019)............................................8, 24

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
   §77z-1(a)(4) ...............................................................................................*passim*
   §77z-1(a)(6) ......................................................................................................6


Federal Rules of Civil Procedure
   Rule 23 ............................................................................................................5, 6

**Page**

### SECONDARY AUTHORITIES

Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Jan. 24, 2023)..................................................................................14

Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2023 Review and Analysis* (Cornerstone Research 2024) ...............................................2

4886-4190-5841.v5

## STATEMENT OF ISSUES PRESENTED

1.      Whether the Court should approve Lead Counsel's request for an award of attorneys' fees in the amount of 30% of the $5 million Settlement, plus interest thereon.

2.      Whether the Court should approve Lead Counsel's request for litigation costs and expenses in the amount of $30,766.91.

3.      Whether the Court should approve Lead Plaintiff's request for an award of $15,337.00 for his time and expenses in connection with his representation of the Settlement Class.

4886-4190-5841.v5

## STATEMENT OF CONTROLLING AUTHORITIES

Pursuant to Local Rule 7.1(d)(2), Lead Plaintiff identifies the following controlling authority for the relief sought:

1.      Federal Rule of Civil Procedure 23(h)

2.      15 U.S.C. §77z-1(a)(4)

3.      *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513 (6th Cir. 1993)

4.      *In re Flint Water Cases*, 63 F.4th 486 (6th Cir. 2023)

4886-4190-5841.v5

Lead Counsel respectfully submits this memorandum in support of its motion for an award of attorneys' fees and expenses and an award to Lead Plaintiff.

## I. PRELIMINARY STATEMENT

After hard-fought litigation, and following arm's-length mediation efforts, Lead Plaintiff Abdulaziz Jamal Johar Al-Johar ("Lead Plaintiff") and Lead Counsel have obtained a $5 million cash recovery for the benefit of the Settlement Class.[1] This substantial recovery was achieved through the skill, hard work, and persistent advocacy of Lead Counsel, who now respectfully move this Court for an award of attorneys' fees in the amount of thirty percent (30%) of the Settlement Amount and expenses incurred in prosecuting this Litigation of $30,766.91, plus interest earned on both amounts.[2] Thirty percent is well within the range of percentages awarded

---

[1] Submitted herewith in support of approval of the proposed Settlement is the Memorandum of Law in Support of Lead Plaintiff's Motion for (I) Final Approval of Class Action Settlement, (II) Approval of Plan of Allocation, and (III) Final Class Certification ("Settlement Memorandum"). The Court is also respectfully referred to the accompanying Declaration of Jonathan Zweig in Support of Motions for Final Approval of Class Action Settlement, Approval of Plan of Allocation, Final Class Certification, Award of Attorneys' Fees and Expenses, and Award to Lead Plaintiff Pursuant to 15 U.S.C. §77z-1(a)(4) ("Zweig Decl.") for a more detailed history of the Litigation, the extensive efforts of Lead Counsel, and the factors bearing on the reasonableness of the requested award of attorneys' fees and expenses. All terms capitalized herein are defined in the Stipulation of Settlement dated September 14, 2023 (the "Stipulation") (ECF 57), unless otherwise indicated. Unless otherwise noted, all emphasis in quotations is added and citations and footnotes are omitted.

[2] In addition, Lead Counsel was ably assisted in this matter by local counsel VanOverbeke, Michaud & Timmony, P.C.

- 1 -

4886-4190-5841.v5

in class actions in this District, in this Circuit, and across the country.

The requested fee is reasonable and warranted in light of the excellent result obtained for the Settlement Class. Lead Counsel recovered a significant percentage of the estimated recoverable damages between 10% and 40%, representing a premium to the median percentage recovery for all securities cases with only Securities Act claims between 2014-2023, which was 7.5%. *See* Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2023 Review and Analysis* at 9, fig. 7 (Cornerstone Research 2024); *see also* Zweig Decl., ¶11 (estimating maximum recoverable damages of $12 million to $50 million).

Lead Counsel marshaled considerable resources, applied a high level of skill and experience, and committed substantial time and expense in prosecuting the Litigation and achieving the Settlement. As set forth in the Zweig Declaration, the Settlement was not achieved until Lead Counsel, among other things: (1) conducted an in-depth, extensive investigation into the facts and potential claims and defenses, based on which it drafted and filed a detailed, 102-paragraph Complaint sufficient to meet the PSLRA's particularized pleading standards; (2) successfully opposed Defendants' motion to dismiss in significant part; (3) briefed Lead Plaintiff's class certification motion; (4) conducted targeted document discovery, including the review of thousands of pages of documents produced by Defendants, Home Point's auditor, and a lead underwriter for its initial public offering; and (5) engaged in

- 2 -

settlement negotiations, including an in person mediation session, which included the exchange of mediation statements and evidence supporting Lead Plaintiff's and Defendants' respective positions on liability and damages, ultimately resulting in the Settlement. *See generally* Zweig Decl.

The significant risks involved in prosecuting this action on behalf of the Settlement Class also warrant the requested fee award. Lead Counsel undertook the representation of the Settlement Class on a contingent fee basis, investing over 1,800 hours of time in the case and $30,766.91 in expenses at the risk of no recovery, no payment, and no reimbursement. Zweig Decl., ¶¶34-36. No payment has been made to counsel to date for its services or for the litigation expenses it has incurred on behalf of the Settlement Class over years of litigation. The risk of no recovery was very real in a case such as this, where Lead Plaintiff asserted claims based on complex legal and factual issues which were vigorously opposed by highly skilled, experienced counsel.

Importantly, the fee and expense request is supported by Lead Plaintiff. *See* Declaration of Abdulaziz Jamal Johar Al-Johar ("Al-Johar Decl."), ¶17, filed herewith. Lead Plaintiff was actively involved in the Litigation, including settlement discussions. *Id.*, ¶¶7-14. Because of this involvement, Lead Plaintiff is now in a unique position to evaluate this $5 million result and assess whether the fee request is fair and reasonable.

- 3 -

No institutions or individuals have objected to Lead Counsel's request for fees and expenses. The absence of objections supports a finding that Lead Counsel's request for fees and expenses is fair and reasonable.[3]

Lead Counsel firmly believes that the Settlement is the result of its diligent and effective advocacy, as well as its reputation as a firm that is highly dedicated to the interests of class members and is committed to zealously prosecuting a meritorious case through trial and subsequent appeals. As discussed herein, the requested fee is fair and reasonable when considered under Sixth Circuit standards and is within the range of awards in class actions approved by courts in this Circuit and nationwide. Moreover, the requested expenses and charges are reasonable in amount and were necessarily incurred for the successful prosecution of this Litigation.

Finally, the award of $15,337.00 sought by Lead Plaintiff pursuant to 15 U.S.C. §77z-1(a)(4) for his time and expenses incurred in representing the Settlement Class, as detailed in the Al-Johar Declaration, should be granted. Lead Plaintiff closely monitored this Litigation and devoted substantial time to staying informed about this case, reviewing pleadings, strategizing with Lead Counsel, and

---

[3]   The objection deadline is April 23, 2024. If any objections are timely filed, Lead Counsel will respond in its reply brief, to be filed on May 7, 2024.

- 4 -

4886-4190-5841.v5

producing documents in discovery.  Lead Plaintiff's and Lead Counsel's combined efforts resulted in a highly-favorable $5 million Settlement.

Accordingly, Lead Counsel respectfully requests the Court to grant its Motion for an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C. §77z-1(a)(4).

## II.   AWARD OF ATTORNEYS' FEES

### A.   Lead Counsel Is Entitled to a Fee from the Common Fund Reflecting the Result Achieved and the Work Done

Lead Counsel's efforts have resulted in the creation of a common fund. Attorneys who recover a common fund are entitled to reasonable attorneys' fees from the fund as a whole.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re Flint Water Cases*, 63 F.4th 486, 493 (6th Cir. 2023) ("Long-standing precedent recognizes that in common fund cases, counsel are entitled to compensation for such common benefit work."); *Carr v. Guardian Healthcare Holdings, Inc.*, 2022 WL 501206, at *9 (S.D. Ohio Jan. 19, 2022) ("'Counsel who create a common fund for the benefit of a class are entitled to a payment of fees and expenses from the fund relative to the benefit achieved.'").  "'[W]hen awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved.'"  *Id.*, at *9 (quoting *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)).  Under Rule 23 and Sixth Circuit authority, awards of attorneys' fees in common fund cases must be

- 5 -

"reasonable under the circumstances."  *Rawlings*, 9 F.3d at 516; *Carr*, 2022 WL 501206, at *9 (Rule 23 authorizes a court to award reasonable attorney's fees.).

For the reasons set forth below, Lead Counsel's requested fee of 30% of the Settlement Amount is reasonable under the circumstances.

## B. The Court Should Apply the Percentage Approach in Awarding Fees

The Sixth Circuit has long endorsed awarding attorneys' fees based on a percentage of a common fund.  *Rawlings*, 9 F.3d at 15-16; *see also Carr*, 2022 WL 501206, at *10 ("The Sixth Circuit has approved a court's use of the percentage-of-the-fund method to determine a reasonable attorney's fee from a common fund settlement.").[4]   Courts in this District and throughout the Sixth Circuit overwhelmingly apply the percentage method in awarding fees in common fund cases, particularly securities cases, recognizing that the percentage-of-the-fund method "affords the Court greater flexibility in assuring that Counsel are adequately compensated for the results that they have achieved and the work that they have

---

[4]   Congress impliedly endorsed the percentage-of-the-fund approach to fee awards in the context of common fund PSLRA cases.  *See* 15 U.S.C. §77z-1(a)(6); *N.Y. State Tchrs.' Ret. Sys. v. GMC*, 315 F.R.D. 226, 243 (E.D. Mich. 2016) ("[B]ecause the PSLRA refers to an award of attorneys' fees and expenses in relation to 'a reasonable percentage of the amount of any damages . . . actually paid to the class,' the Court concludes that the percentage-of-the-fund approach is the better method for calculating Lead Counsel's fee award."), *aff'd sub nom. Marro v. N.Y. State Tchrs.' Ret. Sys.*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

done, while also protecting the Class' interest in the fund." *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1280 (S.D. Ohio 1996), *aff'd*, 102 F.3d 777 (6th Cir. 1996).[5]

Accordingly, the percentage method is the preferred approach to awarding fees in common fund cases and should be applied here.[6]

### C. The Requested 30% Fee Is Consistent with Awards in Common Fund Cases in This District and the Sixth Circuit

In selecting an appropriate percentage award, the Supreme Court recognizes that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for their services in the marketplace. *Mo. v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 33-1/3%

---

[5]  *See Carr*, 2022 WL 501206, at *10 (Sixth Circuit district courts approve percentage approach in common fund cases.); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 762 (S.D. Ohio 2007) ("[T]he percentage approach is the current prevailing method in securities class actions."); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) ("The Court recognizes that the trend in 'common fund cases has been toward use of the percentage method.'"); *In re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *2 (E.D. Tenn. May 17, 2013) ("The percentage-of-the-fund method . . . clearly appears to have become the preferred method in common fund cases.").

[6]  While courts may use the lodestar method as a "cross check" to the percentage under consideration, the Sixth Circuit has held that courts are not required to do so. *See Flint Water*, 63 F.4th at 499 ("And although the district court was not required to conduct a lodestar cross-check, . . . it did conduct such a cross-check."). However, as set forth in §II.D.5, should the Court perform such a cross-check, the lodestar multiplier here is only approximately 1.2, which is well below the norm for similar cases and thus further supports the reasonableness of the requested fee award.

4886-4190-5841.v5

of the recovery. *Blum v. Stenson*, 465 U.S. 886, 903 n* (1984) ("'In tort suits, an attorney might receive one-third of whatever amount the [Lead Plaintiff] recovers. In those cases, therefore, the fee is directly proportional to the recovery.'").

Lead Counsel's request for attorneys' fees equal to 30% of the Settlement Amount is also well within the range of percentage fee awards made by courts in this District and throughout the Sixth Circuit in comparable common fund cases. *See, e.g., Palm Tran, Inc. Amalgamated Transit Union Loc. 1577 Pension Plan v. Credit Acceptance Corp.*, 2022 WL 17582004, at *5 (E.D. Mich. Dec. 12, 2022) (in securities case, awarding 30% of $12 million settlement, plus expenses; finding award to be "more than reasonable" and "comparable to awards in this Circuit"); *Palazzolo v. Fiat Chrysler Autos. N.V.*, 2019 WL 2957143, at *1 (E.D. Mich. 2019) (in securities case, awarding 30% of $14.75 million settlement, plus expenses; finding award to be "fair and reasonable and consistent with awards in similar cases").[7] The percentage therefore is presumptively appropriate in a case such as this.

---

[7]   *See also Zimmerman v. Diplomat Pharm., Inc.*, 2019 WL 3942483, at *1 (E.D. Mich. Aug. 20, 2019) (awarding 30% of $14.1 million settlement fund, plus expenses); *Schuh v. HCA Holdings, Inc.*, 2016 WL 10570957 (M.D. Tenn. Apr. 14, 2016) (awarding fees of 30% of a $215 million recovery); *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 2015 WL 1498888, at *15 (E.D. Mich. Mar. 31, 2015) (awarding one third of common fund as attorneys' fees, and finding that "[c]ourts have noted that the range of reasonableness in common fund cases is from 20 to 50 percent of the common fund"); *Skelaxin*, 2014 WL 2946459, at *1 ("[T]he requested

4886-4190-5841.v5

## D.    The Requested Fee Is Reasonable

Fee awards in common fund cases must also be "reasonable under the circumstances." *Rawlings*, 9 F.3d at 516. The Sixth Circuit has identified several factors that District Courts "[o]ften, but by no means invariably," consider in determining the reasonableness of an attorneys' fee award. *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009).

> Those factors include: "1) the value of the benefit rendered to the [class], 2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, 3) whether the services were undertaken on a contingent fee basis, 4) the value of the services on an hourly basis, 5) the complexity of the litigation, and 6) the professional skill and standing of counsel involved on both sides."

*Flint Water*, 63 F.4th at 495-96, citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974). "'There is no formula for weighing these factors. . . . [E]ach case presents a unique set of circumstances and arrives at a unique settlement, and

---

counsel fee of one third [of $73 million recovery] is fair and reasonable and fully justified [and] within the range of fees ordinarily awarded."); *Se. Milk*, 2013 WL 2155387, at *3 (attorneys' fees representing one-third of a $152 million settlement fund were "certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit"); *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 528 (E.D. Ky. 2010) (awarding fee of 30% of $28.75 million settlement and explaining, "courts in this jurisdiction and beyond have regularly determined that 30% fee awards are reasonable"), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011); *In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*, 2009 WL 1473975, at *3 (S.D. Ohio May 27, 2009) (30% of settlement amount was "within the percentage range that courts have awarded in securities class action settlements in the Sixth Circuit"); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 910 (S.D. Ohio 2001) ("Typically, the percentage awarded ranges from 20 to 50 percent of the common fund created.").

thus different factors could predominate depending on the case.'" *Ranney v. Am. Airlines*, 2016 WL 471220, at *2 (S.D. Ohio Feb. 8, 2016).

All of these considerations support the reasonableness of the requested fee here.

### 1.    The Value of the Benefit Rendered to the Settlement Class Supports the Requested Fee

The value of the benefit rendered to the settlement class is "widely regarded" as "the most important factor" in assessing the reasonableness of attorneys' fees in common fund cases. *In re Flint Water Cases*, 583 F. Supp. 3d 911, 937 (E.D. Mich. 2022) (citing *Cardinal Health*, 528 F. Supp. 2d at 764).  Courts consider the total settlement reached and the number of individuals affected by the underlying allegations in evaluating the value of the benefit. *See Ramey*, 508 F.2d at 1196-98.

Here, Lead Counsel has secured a recovery that provides for a substantial (and definite) cash payment of $5 million.  The Settlement represents between 10% and 40% of the estimated recoverable damages. *See* Zweig Decl., ¶11 (estimating maximum recoverable damages of $12 million to $50 million).  Indeed, "[a] 10% recovery of estimated damages is a favorable outcome in light of the challenging nature of securities class action cases." *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *9 (C.D. Cal. Oct. 10, 2019).

And finally, the number of class members that stand to benefit from the common fund created here is substantial.  To date, notice has been provided to over

- 10 -

4886-4190-5841.v5

9,900 potential Settlement Class Members and nominees. *See* accompanying Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), ¶11. Therefore, it is likely that hundreds, if not thousands of Settlement Class Members will participate in and benefit from the Settlement, further confirming its value.

For all of these reasons, the value of the benefit to the Settlement Class supports the reasonableness of the requested fee award.

### 2. Society's Stake in Rewarding Attorneys Who Enforce Securities Laws Supports the Requested Fee

The federal securities laws are remedial in nature, and, to effectuate their purpose of protecting investors, private lawsuits must be encouraged. *See Basic Inc. v. Levinson,* 485 U.S. 224, 230-31 (1988) (Private causes of action for violations of §10(b) and Rule 10b-5 "constitute[] an essential tool for enforcement of the 1934 Act's requirements."). The Supreme Court has emphasized that private securities actions such as this one provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007) (same). Class actions are the only feasible way to privately enforce securities laws because "absent class actions, most individual claimants would lack the resources to litigate a case of this

- 11 -

magnitude, and individual recoveries are often too small to justify the burden and expense of litigation." *Cardinal Health*, 528 F. Supp. 2d at 765-66.

Given the risk, complexity, and expense of litigating a securities class action such as this one, adequate compensation is in the public interest because it is necessary to "'encourage and support other prosecutions, and thereby forward the cause of securities law enforcement and compliance.'" *Id.* at 766.  Indeed, without adequate compensation, it would be difficult to retain the caliber of lawyers willing and able to prosecute to a favorable conclusion complex, risky, and expensive securities class actions such as this one.  *GMC*, 315 F.R.D. at 244 ("[A]adequate compensation is necessary to encourage attorneys to assume the risk of litigating private lawsuits to protect investors" under the federal securities laws).

Here, the Settlement will provide meaningful relief to thousands of investors, thereby promoting the public interest.  Without the willingness of Lead Counsel to assume the risks associated with litigation such as this one, members of the Settlement Class may not have recovered anything.  Because society benefits from strong advocacy on behalf of investors to redress securities fraud, public policy favors the granting of reasonable fee and expense applications such as this one.

### 3. The Contingent Nature of Counsel's Representation Supports the Requested Fee

"[C]ontingent fee arrangements present a genuine risk that counsel . . . might not recoup their fees or costs in the end." *Flint Water*, 583 F. Supp. 3d at 938-39.

- 12 -

The risk of receiving little or no recovery weighs significantly in considering an award of attorneys' fees. *See, e.g.*, *Carr*, 2022 WL 501206, at *10 (risk of no recovery weighed in favor of approving fee award); *Se. Milk*, 2013 WL 2155387, at *5 ("[T]he fee awarded should fully reflect the risk taken by these lawyers and is a very substantial factor in this case which weighs in favor of the requested fee.").

Lead Counsel undertook this Litigation on a fully contingent fee basis, assuming a real and substantial risk that the Litigation would yield no recovery and leave counsel uncompensated. Lead Counsel invested over 1,800 hours of time and $30,000 in expenses over years of litigation. Reaching a settlement was "far from guaranteed." *Flint Water*, 583 F. Supp. 3d at 938-39. But unlike counsel for Defendants, who are paid an hourly rate and reimbursed for their expenses on a regular basis, and thereby assume essentially no risk of non-payment, Lead Counsel has not been compensated for any of its time or expenses since it began litigating this case in September 2021, when Lead Counsel was appointed.

While high-stakes, complex class actions are inherently difficult to prosecute, the PSLRA's heightened pleading standards and mandatory discovery stay make securities fraud class actions especially prone to risk and require arduous efforts before discovery even begins. There was no guarantee that Lead Plaintiff's claims would survive the PSLRA pleading standards. In fact, the Court dismissed all allegations "relative to the statements surrounding interest rates and the impact they

- 13 -

4886-4190-5841.v5

could have on Home Point's margins and profitability," and held that several allegedly misleading statements concerning the Company's costs were "non-actionable puffery." Zweig Decl., ¶22. Indeed, according to data from NERA Economic Consulting for 2013-2022, out of all securities class actions in which motions to dismiss were decided in 2013-2022, the motions were denied completely in only 20% of cases, while in the other 80% of cases, the motions to dismiss were either granted with prejudice (54%), partially granted (19%) or granted without prejudice (7%), with dismissals being granted sometimes years after a case is filed. *See* Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*, at 11 (NERA Jan. 24, 2023).

Even after partially surviving the pleading stage, Lead Plaintiff still had the substantial burden of proving, *inter alia*, the falsity and materiality of Defendants' alleged misstatements, which Defendants maintained were non-actionable, and would have had to respond to Defendants' assertions that investors' losses were caused by unrelated factors instead of the alleged cost-related misstatements at issue. While Lead Plaintiff believes he would have been able to support his claims with persuasive evidence and expert testimony at summary judgment and/or trial, it is impossible to predict the Court's or jury's reactions, interpretations, and inferences gleaned from the evidence and testimony.

- 14 -

In addition, Defendants intended to challenge Lead Plaintiff's Motion for Class Certification, which was pending when the case settled.  Zweig Decl., ¶25.

The risk of no recovery in complex securities fraud class actions is indeed very real.  There are numerous class actions in which plaintiffs' attorneys, including Lead Counsel, expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise.[8]  Even plaintiffs who survive summary judgment or succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion.[9]

---

[8]  *See, e.g.*, *Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*, 732 F. App'x 543 (9th Cir. 2018) (summary judgment granted in favor of defendants in securities fraud action after seven years of litigation); *Air Prods. & Chems., Inc. v. Airgas, Inc.*, 16 A.3d 48 (Del. Ch. 2011) (in a case where a Robbins Geller attorney represented stockholders in a week-long trial in October 2010, the court ruled in favor of the defendants, denied the shareholder lead plaintiffs' request for relief, and dismissed the case with prejudice); *In re Homestore Inc. Sec. Litig.*, No. 01-cv-11115 (C.D. Cal. 2011) (lead plaintiff verdict but no recovery); *Miller v. Thane Int'l Inc.*, No. 02-cv-01156 (C.D. Cal. 2005) (defense verdict affirmed on appeal); *JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (defense verdict by jury); *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009) (summary judgment granted in favor of defendants after eight years of litigation and after Lead Counsel incurred over $6 million in expenses and worked over 100,000 hours), *aff'd*, 627 F.3d 376 (9th Cir. 2010).

[9]  *See, e.g.*, *Hubbard v. BankAtlantic Bancorp., Inc.*, 688 F.3d 713 (11th Cir. 2012) (Eleventh Circuit Court of Appeals affirmed a lower court ruling which granted defendants' motion for summary judgment as a matter of law based on a plaintiff's failure to prove loss causation, thereby overturning a jury verdict in plaintiff's favor); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-*

Accordingly, the contingent nature of Lead Counsel's representation strongly favors approval of the requested fee.

### 4. The Complexity of the Litigation Supports the Requested Fee

The complexity of the litigation is a significant factor to be considered in determining the reasonableness of a fee award. *Flint Water*, 63 F.4th at 496; *Carr*, 2022 WL 501206, at *11. Courts in this Circuit acknowledge that securities class actions are inherently complex. *New Eng. Health Care Emps. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 634 (W.D. Ky. 2006), *aff'd sub nom Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008); *GMC*, 315 F.R.D. at 236 (PSLRA class action raised "many complex issues").

Proving liability and recovering damages here presented highly complex issues. As discussed in the Zweig Declaration, such complicated issues include the adequacy of disclosure in Home Point's Offering Documents and the impact, if any, of Home Point's representations concerning the extent to which its expenses were fixed or variable. Defendants also argued that the decline in Home Point's stock

---

*Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion.); *In re Apple Comput. Sec. Litig.*, 1991 WL 238298, at *1-*2 (N.D. Cal. Sept. 6, 1991) (verdict against two individual defendants, but court vacated judgment on motion for judgment notwithstanding the verdict).

price was caused by factors unrelated to the alleged misrepresentations, which raised intricate loss causation issues requiring Lead Counsel to closely examine market reactions to a variety of disclosures and other events.

These legal and factual complexities support the reasonableness of the requested award because they made the case more difficult and ultimately dependent upon the outcome of a highly uncertain "battle of experts."

### 5. Lead Counsel's Diligent Prosecution of the Litigation and the Value of Its Services Support the Requested Fee

The value of services on an hourly basis, or lodestar, may be used as a cross-check by courts in the Sixth Circuit to determine the reasonableness of a percentage award. *See, e.g.*, *Ranney*, 2016 WL 471220, at \*1 ("In this district, 'the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier.'"). The Sixth Circuit recently confirmed that a lodestar cross-check is not required when awarding fees based on a percentage of the fund. *Flint Water*, 63 F.4th at 499 ("[A]lthough the district court was not required to conduct a lodestar cross-check, . . . it did conduct such a cross-check."). However, if the Court determines that a cross-check is helpful here, Lead Counsel's lodestar further confirms its diligent prosecution and the reasonableness of the fee requested.

Lead Counsel have spent more than 1,800 hours of attorney and paraprofessional time, amounting to $1,237,267.50 in lodestar based on Lead

- 17 -

4886-4190-5841.v5

Counsel's rates in contingent cases, which are consistent with rates charged by firms performing comparable work for plaintiffs and defendants.  Zweig Decl., ¶34.  The requested fee of 30% of the Settlement Amount represents a very modest multiplier of approximately 1.2 times Lead Counsel's lodestar in this Litigation.  *See Cardinal Health*, 528 F. Supp. 2d at 767 ("Most courts agree that the typical lodestar multiplier in a large post-PSLRA securities class action[] ranges from 1.3 to 4.5."); *In re Regions Morgan Keegan Sec.*, 2013 WL 12110279, at *7 (W.D. Tenn. Aug. 6, 2013) (same, and finding lodestar cross-check multiplier of 3.1 within the reasonable range).  Lead Counsel's time was expended in efforts necessary to advance this litigation, including:

- Conducting an extensive, in-depth factual investigation in order to draft a Complaint that satisfied the stringent pleading standards of the PSLRA and partially survived Defendants' Motion to Dismiss;

- Responding to Defendants' Motion to Dismiss briefing;

- Conducting document discovery, including requesting, negotiating for, obtaining, and reviewing thousands of pages of documents from Defendants, Home Point's auditor, and a lead underwriter of Home Point's IPO, including Home Point's relevant internal management presentations, detailed records of Home Point's expenses, and supporting documentation and analysis;

- Consulting with two experts: Lead Counsel's in-house forensic accountant, and Lead Counsel's in-house damages expert;

- Moving for class certification; and

- Engaging in mediation, for which Lead Counsel submitted a detailed mediation brief supported by exhibits, and attended a day-long mediation session.

- 18 -

A lodestar "cross-check" therefore confirms the reasonableness of the requested fee.

### 6. The Quality of Representation Supports the Requested Fee

Lead Counsel is a nationally known leader in the fields of securities class actions and complex litigation. *See* Zweig Decl., Ex. D (Firm Resume); *see also* www.rgrdlaw.com. The quality of the representation is best demonstrated by the result achieved, far above the average of similar securities class actions in percentage of losses recovered. This recovery is the direct result of the dedication of highly skilled and specialized attorneys with significant experience in the prosecution of securities class actions, which supports the requested fee. *Carr*, 2022 WL 501206, at *11 (representation by counsel with substantial experience in federal and class action litigation supported reasonableness of fee); *Flint Water*, 583 F. Supp. 2d at 946 (counsel's skill level weighed "strongly in favor of granting the fee request[ed]").

The quality of opposing counsel is also important when a court evaluates the services rendered by Lead Counsel. *See, e.g.*, *id.*; *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008) ("Here the Settling Defendants and their insurers are all represented by able counsel at some of the nation's most prestigious law firms. . . . The ability of Co-Lead Counsel to negotiate a favorable settlement in the face of formidable legal opposition further evidences

- 19 -

4886-4190-5841.v5

the reasonableness of the fee award requested.").  Lead Counsel were opposed in this Litigation by very skilled and highly respected counsel from Simpson Thacher & Bartlett LLP and Dykema Gossett PLLC, firms with well-deserved reputations for vigorous advocacy in the defense of complex civil actions.  As detailed in the Zweig Declaration, Defendants' Counsel wielded an arsenal of arguments and litigation strategies in an attempt to obtain the dismissal of this case and to minimize their clients' exposure.  The ability of Lead Counsel to obtain a favorable result for the Settlement Class in the face of such formidable opposition further evidences the quality of its work and the reasonableness of the requested fee.

### E.    Class Member Reaction

"The Class's reaction to the requested fee award is also important evidence of the fairness and reasonableness of the fee request." *Delphi*, 248 F.R.D. at 504; *In re Nationwide Fin. Servs. Litig.*, 2009 WL 8747486, at *14 (S.D. Ohio Aug. 19, 2009) ("The reaction of the Class [only one objection out of nearly 125,000 individual notices sent] also supports the requested fee and expense award.").  Over 9,900 Notices have been mailed to potential Settlement Class Members and nominees, and a summary notice was published.  To date, no Settlement Class Member has objected to Lead Counsel's fee request.  Even the submission of only a small number of

4886-4190-5841.v5

objections by Settlement Class Members, if indeed some objections are ultimately submitted, would be evidence that the requested fee is fair.[10]

All of these factors thus weigh in favor of the requested fee award.

## III.   LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

Lead Counsel also request payment of modest expenses and charges incurred in connection with the prosecution of this Litigation in the amount of $30,766.91. *Se. Milk*, 2013 WL 2155387, at *8 ("'Expense awards are customary when litigants have created a common settlement fund for the benefit of a class.'"); *see also* Zweig Decl., attesting to the accuracy of Lead Counsel's expenses.[11]   The categories of expenses for which counsel seek payment here, such as the mediator's fee, online

---

[10]   *See, e.g.*, *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (district court did not abuse its discretion by finding that absence of substantial number of objections by class members to fee request weighed in favor of approval); *In re Charter Commc'ns, Inc.*, 2005 U.S. Dist. LEXIS 14772, at *59 (E.D. Mo. June 30, 2005) (small number of objections from institutional investors supported approval of fee request).

[11]   *See also New Eng. Health*, 234 F.R.D. at 634-35 ("Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses. . . . In determining whether the requested expenses are compensable, the Court has considered whether the particular costs are the type routinely billed by attorneys to paying clients in similar cases.") (internal citation and quotation marks omitted).

- 21 -

legal and financial research costs, filing fees, work-related travel expenses, and other such costs, are routinely charged in similar cases and are properly awarded from the common fund.[12]

These expenses are described in detail in the accompanying Zweig Declaration.  To date, no objections to Lead Counsel's expense request have been filed.

## IV.   THE REQUESTED AWARD TO LEAD PLAINTIFF IS REASONABLE

Lead Plaintiff seeks $15,337.00 for his time and expenses in connection with his representation of the Settlement Class.  The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of [a] class."  15 U.S.C. §77z-1(a)(4).

Lead Plaintiff took an active role in the Litigation, including reviewing all significant pleadings and briefs, discussing litigation strategy and case developments with Lead Counsel, collecting documents for production, obtaining an expedited visa to travel from Saudi Arabia to the United States to participate in a deposition at a cost of $337.00, monitoring the progress of settlement negotiations, and approving

---

[12] *See, e.g.*, *Palm Tran*, 2022 WL 17582004, at *5 (in securities case that settled before formal discovery, awarding $59,615.60 in expenses); *Palazzolo*, 2019 WL 2957143, at *1 (in securities case, awarding $255,764.05 in expenses).

4886-4190-5841.v5

the Settlement.  Al-Johar Decl., ¶¶7-13.  Lead Plaintiff asked numerous questions of Lead Counsel and was highly engaged in all phases of this Litigation.

With respect to document discovery in particular, Defendants did not limit their document requests to evidence that Lead Plaintiff acquired Home Point stock, such as account statements, but also insisted upon searching for Lead Plaintiff's documents concerning the mortgage industry at large.  Defendants likewise insisted upon searching for broad categories of documents from Al Johar Investment Company Ltd., a company for which Lead Plaintiff's father is the beneficiary and which assigned its claim in this matter to Lead Plaintiff.  *Id.*, ¶¶2-3, 13.  Searching for such documents to produce to Defendants required Lead Plaintiff to work through time-consuming data protection and confidentiality issues.  *Id.*, ¶10.

Lead Plaintiff and the representatives of Al Johar Investment Company Ltd. who devoted substantial time to this matter are finance professionals, and their willingness to spend highly valuable time in pursuing this matter on behalf of the Settlement Class should be appropriately compensated.

Numerous courts have approved reasonable awards to compensate lead plaintiffs for the time and effort they spent on behalf of a class.  *See Cosby v. KPMG LLP*, 2022 WL 4129703, at *3 (E.D. Tenn. July 12, 2022) (granting plaintiff awards of $25,000, $10,000 and $10,000); *Grae v. Corrs. Corp. of Am.*, 2021 WL 5234966, at *1 (M.D. Tenn. Nov. 8, 2021) (awarding $17,525 to lead plaintiff); *Cardinal*

- 23 -

*Health*, 528 F. Supp. 2d at 770-71 (awarding an aggregate of $82,452.81, consisting of $10,830.67 to one lead plaintiff, $14,812.50 to the second lead plaintiff, and $56,809.64 to the third lead plaintiff); *Zimmerman*, 2019 WL 3942483, at *2 (awarding $13,657.51 to lead plaintiffs); *In re Caraco Pharm. Lab'ys, Ltd. Sec. Litig.*, 2013 WL 3213328, at *4 (E.D. Mich. June 26, 2013) (awarding $13,180 to lead plaintiffs).

Accordingly, Lead Plaintiff respectfully requests that the Court grant his request for an award of $15,337.00, including $15,000.00 to reimburse time (Al-Johar Decl., ¶21) and $337.00 to reimburse expenses associated with obtaining an expedited visa (Al-Johar Decl., ¶11). There have been no objections to this request by any Members of the Settlement Class in response to the distribution of the Notice (which indicated the Lead Plaintiff may seek an award of up to $25,000).

- 24 -

## V.    CONCLUSION

For all of the foregoing reasons, Lead Counsel respectfully requests that the Court grant its motion for an award of attorneys' fees and expenses and an award to Lead Plaintiff pursuant to 15 U.S.C. §77z-1(a)(4).

DATED:  April 9, 2024

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART
DANIELLE S. MYERS
JUAN CARLOS SANCHEZ


_/s/ Ellen Gusikoff Stewart_
ELLEN GUSIKOFF STEWART

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
dmyers@rgrdlaw.com
jsanchez@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHAD JOHNSON
JONATHAN ZWEIG
ANA AVALOS CUELLAR
420 Lexington Avenue, Suite 1832
New York, NY  10170
Telephone:  212/432-5100
chadj@rgrdlaw.com
jzweig@rgrdlaw.com
aavalos@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 25 -

4886-4190-5841.v5

VANOVERBEKE, MICHAUD &
  TIMMONY, P.C.
THOMAS C. MICHAUD (P42641)
FRANCIS E. JUDD (P68857)
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com
fjudd@vmtlaw.com

Local Counsel for Lead Plaintiff

- 26 -

CERTIFICATE OF SERVICE

I, Ellen Gusikoff Stewart, hereby certify that on April 9, 2024, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

*/s/ Ellen Gusikoff Stewart*
ELLEN GUSIKOFF STEWART