UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |
|---|---|
| In re HOME POINT CAPITAL INC. SECURITIES LITIGATION | Civ. No. 4:21-cv-11457-SDK-KGA<br><br>Judge Shalina D. Kumar<br>Magistrate Judge Kimberly G. Altman<br><br>CLASS ACTION |

## DECLARATION OF JONATHAN ZWEIG IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, APPROVAL OF PLAN OF ALLOCATION, FINAL CLASS CERTIFICATION, AWARD OF ATTORNEYS' FEES AND EXPENSES, AND AWARD TO LEAD PLAINTIFF PURSUANT TO 15 U.S.C. §77z-1(a)(4)

I, Jonathan Zweig, declare as follows:

1.     I am a partner of the firm Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or the "Firm").  The Court has appointed Robbins Geller as Lead Counsel in the above-captioned action (the "Litigation")[1], and my client, Abdulaziz Jamal Johar Al-Johar, has been appointed Lead Plaintiff in this Litigation.

2.     I have been the lead attorney responsible for the prosecution and resolution of this Litigation since Robbins Geller was appointed Lead Counsel on

---

[1]   Unless otherwise stated or defined, all capitalized terms used herein have the meanings provided in the Stipulation of Settlement (the "Stipulation") dated September 14, 2023 (ECF 57).

September 10, 2021.  I am familiar with the proceedings in this Litigation, and have knowledge of the matters set forth herein based upon my involvement in this matter and my supervision of and communications with other lawyers and staff assigned to this case.  I prepared this declaration with the assistance of other lawyers and staff at Robbins Geller and reviewed it before signing.  I believe the information contained herein to be accurate based on information I know, as well as information provided to me by others.

3.     I submit this declaration in support of Lead Plaintiff's and Lead Counsel's motions requesting final approval of the $5 million cash settlement (the "Settlement"); the Plan of Allocation; an award of attorneys' fees; an award of litigation expenses; and an award to Lead Plaintiff.

4.     The relevant facts that support final approval are set forth in the concurrently filed Memorandum of Law in Support of Lead Plaintiff's Motion for (I) Final Approval of Class Action Settlement, (II) Approval of Plan of Allocation, and (III) Final Class Certification ("Final Approval Brief") and Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C. §77z-1(a)(4) ("Fee Brief").  Below, I have highlighted certain facts that I view as particularly significant to the Settlement, the Plan of Allocation, the requested fee and expense awards, and the requested Lead Plaintiff award.

2

4894-7466-0019.v5

## I.   THE SETTLEMENT

5.     Securities class actions are complex cases that are challenging to win and, given the stakes involved, result in defendants hiring sophisticated counsel and vigorously disputing liability and damages.  This case was no exception.  I firmly believe that Plaintiff's claims are meritorious, but given the risks and delays that further litigation through trial and appeal could have entailed, I believe just as firmly that the Settlement is in the best interests of the Settlement Class.

6.     This case was hard fought by both sides.  The parties fully briefed Defendants' motion to dismiss, and benefited from the Court's comprehensive ruling.  As detailed below, the parties were engaged in fact discovery when the parties reached an agreement in principle to resolve the Litigation.  These proceedings gave Lead Counsel a full appreciation of both the merits and weaknesses of the claims and defenses in this matter.

7.     The course of this Litigation to date makes clear that, as discussed in the Final Approval Brief, the Settlement Class would face real risks if this case proceeded to trial and appeal.  For example, Defendants have argued that Home Point's statements about its cost structure were not misleading because Home Point had disclosed the extent to which its expenses were variable or fixed, and the Offering Documents contained risk disclosures that addressed the potential for rising

3

costs.[2]  Further, while the Court ruled that the alleged misstatements that remain in this case are not puffery for motion-to-dismiss purposes,[3] a more challenging standard would apply in later stages of the case.  Defendants have also argued that there is no loss causation on the ground that the decline in Home Point's stock price was predominately caused by unrelated factors, such as increasing interest rates and intense competition with other wholesale mortgage lenders.  In addition, Defendants have argued that much of the decline in Home Point's stock price during the relevant period occurred before Home Point allegedly revealed the truth about its costs, potentially limiting recoverable damages.[4]

8.      Lead Counsel believes that there are strong responses to each of Defendants' arguments, but if Defendants had succeeded with respect to even one of them, the Settlement Class may have recovered little or nothing.  Lead Counsel also had to consider Home Point's financial viability, as the Company entered into a number of transactions to sell off its assets and wind down its operations in early 2023.  Lead Counsel had to take into account the possibility that litigating this case

---

[2]   *See* Brief in Support of Defendants' Motion to Dismiss the Amended Complaint, ECF 26, at 12-15.

[3]   Order Granting in Part and Denying in Part Defendant's Motion to Dismiss, ECF 39, at 11-13.

[4]   *See* Brief in Support of Defendants' Motion to Dismiss the Amended Complaint, ECF 26, at 23.

4894-7466-0019.v5

through trial and appeal would have delayed a resolution such that Home Point's ability to fully fund a recovery for the Settlement Class may have been in question.

9.     The parties engaged in extensive, arm's-length negotiations before an experienced mediator, Gregory P. Lindstrom, Esq., of Phillips ADR. On May 3, 2023, after submitting mediation statements, the parties attended a full-day, in-person mediation with Mr. Lindstrom.  While a settlement was not reached during that session, the parties continued their good faith efforts to resolve the case following the mediation.  In those discussions, Lead Counsel insisted on, and succeeded in obtaining, the opportunity to receive and review documents from Home Point's auditor before agreeing to a settlement.  On June 29, 2023, the parties executed a Settlement Term Sheet agreeing to settle the case for $5,000,000.

10.     The negotiations were at arm's length and were informed by, among other things, extensive investigation and litigation by Lead Counsel, including: (i) analysis of publicly available information about Home Point; (ii) motion practice seeking dismissal of the claims; (iii) review and analysis of documents produced by Defendants, the Company's auditor, and a lead underwriter of the IPO in response to Lead Plaintiff's discovery requests; and (iv) consultation with two experts: Lead Counsel's in-house forensic accountant, and Lead Counsel's in-house damages expert.  Lead Plaintiff and Lead Counsel were well-informed regarding the strengths

5

and weaknesses of their case, and the Settlement resulted from a thorough, arm's-length process.

11.     Lead Plaintiff's and Lead Counsel's decision to accept the Settlement was also informed by the likely available damages.  While total theoretical damages under Section 11 of the Securities Act amount to approximately $50 million in this case, most of the stock price decline that gives rise to such damages took place on days other than when the cost-related facts at issue here were revealed, and during a period in which Defendants contend that factors not at issue here—rising interest rates and intense competition—were negatively impacting all wholesale mortgage lenders.  Based on the stock price decline on May 6, 2021 when the cost-related facts at issue were revealed, potential damages amount to approximately $12 million.  Expanding the stock price decline to a two-day period, which Defendants contend is not appropriate, would result in potential damages of approximately $20 million.  Moreover, Defendants have argued that even the stock price decline on May 6-7, 2021 was caused by unrelated disclosures concerning the effect of increasing interest rates and competition in the marketplace.  Again, Lead Counsel believes that there are strong responses to such arguments, including that such purportedly unrelated disclosures did not provide new information to the market.  However, if the fact-finder were to determine that a one-day window applied and that the approximately $12 million decline on May 6, 2021 was caused in equal part by disclosures

4894-7466-0019.v5

concerning costs, interest rates, and competition, damages could be reduced to $4 million, before even considering any of the defenses to liability.  On balance, Lead Plaintiff and Lead Counsel believe that such a recovery would constitute a favorable, realistic trial outcome in this case.  In that context, Lead Plaintiff and Lead Counsel believe that the $5 million Settlement, which achieves a greater recovery while avoiding the risks of continued litigation, is a very favorable result.

12.     Given the complexities of this Litigation, the many issues in contention, the amount in controversy, and the substantial risks of continued litigation, I believe the Settlement, which provides an immediate and substantial benefit of $5 million in cash, represents a favorable resolution of this Litigation.  Importantly, the Settlement eliminates the risk that Lead Plaintiff and the Settlement Class might recover less, or even nothing, if the Litigation continued.

## II.     THE PLAN OF ALLOCATION

13.     As set forth fully in the Notice, the proposed Plan of Allocation provides for the distribution of the Net Settlement Fund to Settlement Class Members who timely submit valid Proof of Claim forms.  The Plan of Allocation attempts to distribute equitably the Net Settlement Fund to Settlement Class Members who suffered economic loss as a proximate result of the alleged wrongdoing.

4894-7466-0019.v5

14.     Consistent with the allegations in the Complaint, for a Settlement Class Member to have a Recognized Loss Amount under the Plan of Allocation, shares of Home Point common stock must have been purchased or otherwise acquired in or pursuant and/or traceable to the IPO (and between January 29, 2021 and June 21, 2021, inclusive).

15.     The method of calculating a Recognized Loss Amount, as detailed in the Notice, takes into account: (a) the statutory scheme and damages model for the claims alleged; (b) when and at what price the shares were purchased or acquired; (c) whether, when, and at what price the shares were sold; and (d) whether the shares were held at the close of trading on particular dates.

16.     As set forth in the Notice, under the Plan of Allocation, the Claims Administrator will assess each Authorized Claimant's overall transactions to determine its "Recognized Claim," which is the least of the following, as applicable: (i) $6.69 ($13.00 less $6.31), or (ii) the Purchase Price less the Sales Price, or (iii) the Purchase Price less $6.31, or (iv) $13.00 less the Sales Price.  If the Authorized Claimant had an overall market gain, its Recognized Claim will be zero.

17.     Once Notice and Administration Expenses, Taxes and Tax Expenses, Court-approved attorneys' fees and expenses, and any awards pursuant to 15 U.S.C. §77z-1(a)(4) have been paid from the Settlement Fund, the remaining amount (*i.e.*, the Net Settlement Fund) will be distributed *pro rata* to Authorized Claimants who

8

are entitled to a distribution of at least $10.00 based on their Recognized Claims. If funds remain nine (9) months after the initial distribution, and if it is cost-effective to do, the Claims Administrator will conduct additional distributions of any remaining funds to Authorized Claimants who would be entitled to receive at least $10.00. After any such additional distributions are complete, the Plan of Allocation calls for any remaining balance in the fund to be contributed to non-sectarian, nonprofit charitable organization(s), to be selected by Lead Counsel.

18. For the reasons set forth above and in the Final Approval Brief, I believe that the Plan of Allocation represents a fair and reasonable method to equitably distribute the Net Settlement Fund among Authorized Claimants.

## III. ATTORNEYS' FEES, EXPENSES, AND LEAD PLAINTIFF AWARD

19. Lead Counsel respectfully requests that the Court award 30% of the $5 million Settlement Amount in attorneys' fees and $30,766.91 in litigation expenses, plus the interest earned thereon at the same rate for the same period as that earned on the Settlement Fund until paid. Lead Counsel further requests that the Court award Lead Plaintiff $15,337.00 in connection with his representation of the Settlement Class pursuant to 15 U.S.C. §77z-1(a)(4). I believe that all of these amounts are reasonable and appropriate.

20. The arguments and authorities supporting these requests are set forth in the accompanying Fee Brief. Details concerning the time and resources expended

4894-7466-0019.v5

in the research, investigation, and prosecution of this Litigation, and additional support for the fees and expenses sought, are set forth herein.

21. The initial complaint in the Litigation was filed on June 21, 2021. On September 10, 2021, the Court appointed Abdulaziz Jamal Johar Al-Johar as Lead Plaintiff and Robbins Geller as Lead Counsel. On November 9, 2021, Plaintiff filed the operative Amended Class Action Complaint alleging violations of §§11 and 15 of the Securities Act. On January 10, 2022, Defendants moved to dismiss the Complaint. On March 11, 2022, Plaintiff filed his opposition to Defendants' motion to dismiss. On April 11, 2022, Defendants filed their reply brief.

22. On October 5, 2022, the Court granted in part and denied in part Defendants' motion. The Court dismissed all allegations "relative to the statements surrounding interest rates and the impact they could have on Home Point's margins and profitability."[5] The Court further held that several allegedly misleading statements concerning the Company's costs were "non-actionable puffery."[6] The Court also held that other allegedly misleading statements concerning the

---

[5] Order Granting in Part and Denying in Part Defendant's Motion to Dismiss, ECF 39, at 10-11.

[6] *Id.* at 12.

4894-7466-0019.v5

Company's costs "cannot be deemed unactionable puffery and dismissal under Rule 12(b)(6) on these grounds is not appropriate."[7]

23.    Defendants answered the Complaint with respect to the remaining allegations on November 4, 2022.  On January 10, 2023, the parties filed their Rule 26(f) Joint Discovery Plan, and the parties filed an Amended Rule 26(f) Joint Discovery Plan on January 17, 2023.  On February 3, 2023, the Court entered its Rule 16 Scheduling Order (Phase I).

24.    Fact discovery was underway when the parties reached an agreement in principle to resolve the Litigation.  Such discovery included the production of thousands of pages of documents by Defendants, Home Point's auditor (BDO USA, LLP), and a lead underwriter for the IPO (Goldman Sachs & Co. LLC).  Because this case concerns Home Point's allegedly misleading statements concerning its costs, Lead Counsel prioritized the Company's relevant internal management presentations concerning cost-related issues.  Additionally, Home Point's auditor produced a table listing over 1,200 audit documents, from which Lead Counsel selected and reviewed over 200 documents that appeared most relevant.  These included detailed records of Home Point's expenses, spreadsheets in which Home Point's costs were evaluated to determine whether they were being reported

---

[7]    *Id.* at 12-13.

4894-7466-0019.v5

accurately, board meeting minutes and presentations, management presentations and representation letters, IPO-related materials, financial statements and notes, internal audit reports, auditor memoranda and reports, supporting spreadsheets, and related email communications. Lead Counsel then analyzed these documents with the assistance of its in-house forensic accountant.

25. On March 15, 2023, Plaintiff moved to certify the class. The motion remained pending when the parties reached an agreement in principle to resolve the Litigation.

26. On May 3, 2023, Plaintiff and Defendants participated in a voluntary confidential mediation with Gregory P. Lindstrom, Esq., of Phillips ADR. The mediation was preceded by submission of mediation statements by the Settling Parties. The Settling Parties engaged in good faith negotiations but did not reach a settlement at the mediation session.

27. Lead Counsel engaged in further discussions with the mediator and with Defendants concerning a potential resolution. These negotiations were challenging and complex, and as noted above, the Settling Parties ultimately reached an agreement to settle the case for $5 million.

28. On the other side, Defendants were represented by sophisticated lawyers from the highly respected firm of Simpson Thacher & Bartlett LLP. The ability of Lead Counsel to obtain a favorable settlement in the face of defense

12

counsel's skillful opposition confirms the quality of the Settlement Class's representation in this matter.

29.     The time spent by Lead Counsel and its staff on this case was at the expense of the time that they could have devoted to other matters.  Lead Counsel has also advanced substantial litigation costs.

30.     The outstanding recovery obtained for the Settlement Class is the direct result of the significant efforts of attorneys who possess substantial experience in litigation and in the prosecution of complex securities class actions.    The identification and background of my Firm and its partners is attached hereto as Exhibit D.

31.     Lead Counsel assembled a litigation team that included attorneys with significant trial and securities class action experience, and Lead Counsel's in-house forensic accountant and damages expert.  The undersigned, for example, is a former Assistant Attorney General with the New York State Office of the Attorney General. Had this case not settled, the team was fully prepared to take this case to trial and continue litigating through any appeal.

32.     Lead Counsel believes that the requested fee and litigation expense awards are reasonable and appropriate in light of the result obtained, the skill and effort required, the complexity of the Litigation, the risks of undertaking this Litigation on a contingency basis, fee awards in comparable class actions, and the

4894-7466-0019.v5

policy of incentivizing counsel to take on and diligently prosecute meritorious class actions.

33. The following information regarding Robbins Geller's time and expenses is taken from time and expense reports and supporting documentation prepared and/or maintained by my firm in the ordinary course of business. I am the partner who oversaw and/or conducted the day-to-day activities in the Litigation and I reviewed these reports (and backup documentation where necessary or appropriate) in connection with the preparation of this declaration. The purpose of this review was to confirm both the accuracy of the entries on the printouts as well as the necessity for, and reasonableness of, the time and expenses committed to the Litigation. As a result of this review, reductions were made to both time and expenses in the exercise of billing judgment. Based on this review and the adjustments made, I believe that the time reflected in my firm's lodestar calculation and the expenses for which payment is sought herein are reasonable and were necessary for the effective and efficient prosecution and resolution of the Litigation. In addition, I believe that these expenses are reasonable and were necessary for the effective and efficient prosecution and resolution of the Litigation.

34. After the reductions referred to above, the number of hours spent on the Litigation by the Firm is 1,877.10. A breakdown of the lodestar is provided in the attached Exhibit A. The lodestar amount for attorney/paraprofessional time based

14

on the Firm's current rates is $1,237,267.50. The hourly rates shown in Exhibit A are the Firm's current rates in contingent cases set by the Firm for each individual. These hourly rates are consistent with hourly rates submitted by the Firm to state and federal courts in other securities class action litigation. The Firm's rates are set based on periodic analysis of rates charged by firms performing comparable work both on the plaintiff and defense side. Different timekeepers within the same employment category (*e.g.*, partners, associates, paralegals, etc.) may have different rates based on a variety of factors, including years of practice, years at the Firm, years in the current position (*e.g.*, years as a partner), relevant experience, relative expertise, and the rates of similarly experienced peers at this Firm or other firms. For personnel who are no longer employed by the Firm, the "current rate" used for the lodestar calculation is based upon the rate for that person in his or her final year of employment with the Firm. In addition, Lead Counsel was ably assisted in this matter by local counsel VanOverbeke, Michaud & Timmony, P.C.

35.    Additionally, Robbins Geller has incurred $30,766.91 in expenses in connection with the prosecution of the Litigation. Those expenses are summarized by category in the attached Exhibit B.

36.    The following is additional information regarding certain of these expenses:

15

(a)     Filing and Other Fees: $1,538.05.   These expenses have been paid to the Court for filing fees and to an attorney service firm who served subpoenas and delivered courtesy copies of the lead plaintiff motion to Judge Michelson's Chambers.  The vendors who were paid for these services are set forth in the attached Exhibit C.

(b)     Transportation, Hotels, and Meals: $2,188.34.   In connection with the prosecution of this case, the Firm has paid for travel expenses for two individuals to attend the hearing on the motion to dismiss.

(c)     Consultant (Haystackid, LLC): $700.00.  These are the fees of an eDiscovery services firm that provided consulting services with respect to the collection and production of documents.

(d)     Online Legal and Financial Research: $6,253.99.  This category includes vendors such as LexisNexis, Refinitiv, and Westlaw.  These resources were used to obtain access to SEC filings, factual databases, legal research, and for proofreading and "blue-booking" court filings (including checking all legal authorities cited and quoted in briefs).  This category represents the expenses incurred by Robbins Geller for use of these services in connection with this Litigation.  The charges for these vendors vary depending upon the type of services requested.  For example, Robbins Geller has flat-rate contracts with some of these providers for use of their services.  When Robbins Geller utilizes online services

16

provided by a vendor with a flat-rate contract, access to the service is by a billing code entered for the specific case being litigated.  At the end of each billing period in which such service is used, Robbins Geller's costs for such services are allocated to specific cases based on the percentage of use in connection with that specific case in the billing period.  As a result of the contracts negotiated by Robbins Geller with certain providers, the Class enjoys substantial savings in comparison with the "market-rate" for *a la carte* use of such services which some law firms pass on to their clients.  For example, the "market-rate" charged to others by LexisNexis for the types of services used by Robbins Geller is more expensive than the rates negotiated by Robbins Geller.

(e)    Mediation Fees (Phillips ADR Enterprises, P.C.): $20,000.00. These are the fees of Gregory P. Lindstrom, a respected mediator who conducted a mediation session and oversaw settlement discussions, leading to the Settlement.

37.    The expenses pertaining to this case are reflected in the books and records of Robbins Geller.  These books and records are prepared from receipts, expense vouchers, check records, and other documents and are an accurate record of the expenses.

38.    Lead Counsel also requests that the Court award Lead Plaintiff $15,337.00 in connection with his representation of the Settlement Class pursuant to 15 U.S.C. §77z-1(a)(4).  As set out in the Fee Brief and the declaration of Abdulaziz

17

4894-7466-0019.v5

Jamal Johar Al-Johar filed herewith, this award is merited in light of the time and effort of Lead Plaintiff and representatives and employees of Al Johar Investment Company Ltd. ("Al Johar Inv. Co."), which assigned its claim to Lead Plaintiff, in monitoring counsel and participating in discovery.  For example, Lead Plaintiff spent significant time consulting with Lead Counsel concerning the respective merits of the Settlement and of continued litigation.  Lead Plaintiff also spent significant time consulting with Lead Counsel concerning data protection and confidentiality issues with respect to the production of documents by Lead Plaintiff and by Al Johar Inv. Co.  Discovery was made more time-consuming by the fact that Defendants insisted upon obtaining Lead Plaintiff's and Al Johar Inv. Co.'s documents concerning the mortgage industry in general, rather than only evidence of their transaction in Home Point stock, and Lead Plaintiff and representatives of Al Johar Inv. Co. spent significant time searching for such documents.  Lead Plaintiff also obtained an expedited visa to travel from Saudi Arabia to the United States to be deposed when Defendants refused to agree to a remote deposition.  In short, Lead Counsel believes that the requested award is fully merited, as Lead Plaintiff was highly engaged in this case at all stages, and the requested award is consistent with awards in similar cases.

18

## IV.   CONCLUSION

39.    As described above and in the Final Approval Brief and Fee Brief, Lead Counsel respectfully submits that the Settlement and Plan of Allocation should be approved; that the Court should award attorneys' fees of 30% of the Settlement Amount and $30,766.91 in litigation expenses, plus the interest earned thereon at the same rate and for the same period as that earned on the Settlement Fund until paid; and that the Court should award Lead Plaintiff an award of $15,337.00, in connection with his representation of the Settlement Class pursuant to 15 U.S.C. §77z-1(a)(4).

I declare under penalty of perjury that the foregoing is true and correct. Executed this 9th day of April, 2024 in New York, New York.

*/s/ Jonathan Zweig*
JONATHAN ZWEIG

4894-7466-0019.v5

CERTIFICATE OF SERVICE

I, Ellen Gusikoff Stewart, hereby certify that on April 9, 2024, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

*/s/ Ellen Gusikoff Stewart*
ELLEN GUSIKOFF STEWART