UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IN RE HOME POINT CAPITAL INC. SECURITIES LITIGATION | Case No. 21-11457 Honorable Shalina D. Kumar Magistrate Judge Kimberly G. Altman |

## ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, PLAN OF ALLOCATION, AWARD OF ATTORNEYS' FEES AND EXPENSES, AND AWARD TO LEAD PLAINTIFF UNDER 15 U.S.C. § 77z-1(a)(4) (ECF NOS. 61, 62)

The Court conducted a fairness hearing on May 14, 2024 to determine whether a settlement agreement should be given final approval on behalf of the certified settlement class in this case. The Federal Rules of Civil Procedure require court approval of settlements in class actions, Fed. R. Civ. P. 23(e)(2), and if the settlement would determine the rights of and bind absent class members, "the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." *Id.*

The May 2024 hearing was the second step in the settlement approval process. *See* Manual for Complex Litigation § 23.632-.633 (4th ed.); *see also Tennessee Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565 (6th Cir. 2001). As the first step in the process, the Court

1

granted preliminary approval of the proposed settlement (the "Settlement") under Federal Rule of Civil Procedure 23(e).  The Court approved the form and substance of the notice of Settlement to the Class. The Court ordered that the notice be mailed to identified class members via first-class mail by January 16, 2024 and published in *The Wall Street Journal* and over a national newswire service by January 23, 2024.  The Court approved the retention of Giraldi & Co. LLC as the claims administrator to supervise and administer the notice procedure and to administer the Settlement, process claims, and make distributions.  Now on the plaintiffs' motions, the Court grants final approval of class settlement, as well as a plan of allocation, an award of attorneys' fees and expenses, and an award to lead plaintiff under 15 U.S.C. § 77z-1(a)(4). *See* ECF Nos. 61, 62.

## I. Background

The Settlement addresses plaintiffs' claims under Sections 11 and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k and 77o, alleging that Home Point Capital, Inc. ("Home Point"), a residential mortgage originator and servicer, certain individual Home Point officers and directors, and private equity funds, which owned the majority of Home Point common stock and voting power, made material misrepresentations and failed to make adequate disclosures in the prospectus and registration statement

(collectively, "Offering Documents") issued in connection with Home Point's initial public offering ("IPO").

The Court previously certified as a class for settlement purposes only all persons allegedly damaged by purchasing or otherwise acquiring common stock in Home Point's IPO or after the IPO but on or before June 21, 2021 (the "Class"). *See* ECF No. 59, PageID.2205.

## II. Terms of Settlement

Under the Settlement, the defendants agreed to deposit $5 million into an escrowed account ("Settlement Fund") for payment of administration and notice expenses, Class members' claims, attorneys' fees and expenses, and reimbursement of the lead plaintiff's time and expenses.

The Settlement Fund will pay the notice and administration expenses, the Court-approved attorneys' fees and expenses and awards to lead plaintiff under 15 U.S.C. § 77z-1(a)(4). The remaining amount, the "Net Settlement Fund," will be distributed pro rata to Class claimants who are entitled to distribution of at least $10.00 based on their Recognized Claims, defined as the least of the per share value of (i) $6.69 ($13.00 less $6.31); (ii) the claimant's purchase price less the sales price; (iii) the purchase price less $6.31; or (iv) $13.00 less the sales price per share. Claimants who

experienced an overall market gain will have a Recognized Claim of zero. ECF No. 64, PageID.2316.

If money remains in the Net Settlement Fund nine months after the initial distribution, and it is cost-effective, the claims administrator will make additional distributions to claimants who would be entitled to receive at least $10.00. *Id*. at 2317. Any remaining balance in the fund after the completed distributions will be donated to the non-sectarian, nonprofit charitable organization(s) selected by lead counsel. *Id*.

**III. Class Notice and Response to Settlement**

Under the schedule set by the Court, the period for filing claims ran until April 15, 2024, and the period for objections and opt-out notices ended April 23, 2024. The settlement administrator sent claims packages to 9,988 potential class members and nominees. ECF No. 67. One institutional notice recipient indicated it anticipated forwarding claims packages to 4,547 potential class members. *Id*.

The claims administrator has averred that it published the summary notice in *The Wall Street Journal* and over *Business Wire* and that it established and has maintained a website and toll-free helpline dedicated to the Settlement and accommodating potential class members. *Id*. The website provided the relevant information about the Settlement, including the claim, objection, and exclusion deadlines and the date and time for the

4

fairness hearing. *Id*. It also posted downloadable copies of the notice and claim form and allowed claimants to complete and submit a proof of claim electronically. *Id*.

Plaintiffs indicate that the claims administrator has received no requests for exclusion from and no objections to the Settlement. *Id*.

## IV. Final Approval of Settlement and Plan of Allocation

Federal Rule of Civil Procedure 23(e) imposes certain "rules for the settlement, dismissal, or compromise of class claims." *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1093 (6th Cir. 2016). "It requires that class-action claims 'may be settled, voluntarily dismissed, or compromised only with the court's approval.'" *Id*. (quoting Fed. R. Civ. P. 23(e)). "Approval is only warranted where the court determines, inter alia, that the proposed class settlement would be 'fair, reasonable, and adequate.'" *Id.*

Rule 23(e)(2) provides the Court with four specific factors to consider when determining whether a proposed settlement is "fair, reasonable, and adequate:"

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[1]

The Sixth Circuit also considers the following factors when assessing whether a class settlement should be approved: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Whitlock*, 843 F.3d at 1093 (quoting *UAW v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).

Plaintiffs have established that the Settlement is adequate, reasonable, and fair to the class.  First, the class representative, the lead plaintiff, and class counsel have adequately represented the class. Lead plaintiff, Abdulaziz Jamal Johar Al-Johar, holds claims entirely typical of

---

[1] The same standards applicable to approval of a settlement also govern the Court's review of a plan of allocation of a settlement fund in a class action. *New York State Teachers' Retirement Sys. v. General Motors Co.*, 315 F.R.D. 226, 235 (E.D. Mich. 2016*), aff'd sub no. Marro v. N.Y. State Tchrs.' Ret. Sys.*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017). Like the settlement itself, the distribution plan must be fair, reasonable, and adequate. *Id.*

6

those of the Class members and actively participated in the litigation,

working closely with lead counsel. ECF No. 63. Likewise, lead counsel is

highly experienced in securities fraud litigation, with a long, successful track

record representing investors in courts nationwide. Lead counsel vigorously

prosecuted the interests of the Class, withstanding defendants' motion to

dismiss and securing a favorable recovery for the Class. *See Young v.*

*Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012) (holding

adequacy of representation is met if the lead plaintiffs have common

interests with unnamed members of the class and are willing to vigorously

prosecute the interests of the class through qualified counsel). This factor

warrants approval of the Settlement.

  Second, the Settlement was reached at arm's length with the

assistance of an experienced mediator, satisfying both Rule 23(e)(2)(B) and

the Sixth Circuit's fraud or collusion factor. Courts consistently approve

class action settlements achieved through arms-length negotiations,

particularly if an independent mediator participated in those negotiations.

*See Karpik v. Huntington Bancshares Inc.*, 2021 WL 757123, at *4 (S.D.

Ohio Feb. 18, 2021); *Arledge v. Domino's Pizza, Inc.*, 2018 WL 5023950, at

*2 (S.D. Ohio Oct. 17, 2018). Here a full-day, in-person mediation, with an

experienced mediator, resulted in the opportunity for lead counsel for

plaintiff to receive and review documents from Home Point's auditor before ultimately agreeing to the Settlement. *Id*. at PageID.2313.

The stage of proceedings at which the Settlement occurred also satisfies the third Sixth Circuit factor: amount of discovery completed by the parties. *See UAW*, 497 F.3d at 631. "The relevant inquiry with respect to this factor is whether the plaintiff has obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement." *N.Y. State Teachers.' Ret. Sys. v. General Motors Co.*, 315 F.R.D. 226, 236 (E.D. Mich. 2016), *aff'd sub nom. Marro v. N.Y. State Tchrs.' Ret. Sys.*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017); *see also Palm Tran, Inc. Amalgamated Transit Union Loc 1577 Pension Plan v. Credit Acceptance Corp.*, 2022 WL 17582004, at *4 (E.D. Mich. Dec. 12, 2022) ("The absence of formal discovery is not an obstacle to settlement approval so long as the parties and the Court have adequate information in order to evaluate the relative position of the parties." (cleaned up)). The parties here were engaged in fact discovery when they negotiated the Settlement; lead counsel had reviewed thousands of pages of documents produced by defendants and third parties, including documentation and analysis from Home Point's auditor, which plaintiff received as part of the mediation process. ECF No. 64, PageID.2311. The parties also had the

benefit of a fully briefed, argued, and decided motion to dismiss and a filed motion for class certification. *Id.*; ECF No. 61, PageID.2248-49.

Fourth, the Court finds that Settlement provides adequate relief to the class, considering the costs, risks, and delay of trial and appeal. Fed. R. Civ. P. 23(e)(2)(C)(i); *see also UAW*, 497 F.3d at 631 (second and fourth factors: the complexity, expense, and likely duration of the litigation and the likelihood of success on the merits). Although some of plaintiffs' claims survived defendants' motion to dismiss, significant contested and complex issues of liability and damages remained; prevailing at summary judgment or trial was by no means certain. A battle of economic experts, as would have been necessary to further prosecute the litigation, would have been costly with uncertain results. When Settlement was reached, class certification had yet to be argued or decided, introducing further risk and cost to continued litigation. Moreover, Home Point's continued financial viability was also uncertain; at the time Settlement was reached, Home Point was selling its assets and winding down its operations. ECF No. 64, PageID.2312.

Notwithstanding these significant risks, the Settlement delivered a favorable recovery for the Class. Lead counsel estimated a range of potential damages from $12 million to $50 million, without any consideration of liability defenses which could have precluded any recovery. *Id*. The

9

Settlement represents 10 to 40 percent of these estimated recoverable damages, a commendable result when compared to seven and a half percent, the median percentage recovery for all securities cases with only Security Act claims between 2014 and 2023. ECF No. 61, PageID.2247-48. The adequacy of the Settlement under the circumstances weighs in favor of court approval.

The remaining Rule 23(e)(2) factors support final approval as well. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii), (iii), (iv) & (D). First, the effectiveness of the proposed method of distributing relief to the Class, including the method of processing the class members' claims are well-established and a substantially similar distribution process has been approved by courts in this district. *See, e.g.*, *N.Y. State Teachers*, 315 F.R.D. at 233-34, 245.

Lead counsel's application for 30% of the Settlement Fund for attorneys' fee is consistent with what courts have awarded and approved in similar cases. ECF No. 62; *see, e.g., Palazzolo v. Fiat Chrysler Autos. N.V.*, 2019 WL 2957143, at *1 (E.D. Mich. June 5, 2019). Likewise, the parties' confidential agreement establishing conditions under which the defendants may terminate the Settlement if a certain threshold number of class members opt out is a standard provision of securities class action settlements and is routinely approved by courts. *See, e.g.*, *Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *5 (N.D. Tex. Apr. 25,

2018). Finally, the Plan of Allocation provides each class member with its pro rata share of the Net Settlement Fund based on their Recognized Claim.

The remaining Sixth Circuit factors—endorsement of Settlement by lead counsel and lead plaintiff, reaction of the class to the Settlement, and the public interest—all favor final approval of the Settlement. Both lead counsel and lead plaintiff endorse the Settlement. *See Wright v. Premier Courier, Inc.*, 2018 WL 3966253, at *5 (S.D. Ohio Aug. 17, 2018) (courts should defer to the judgment of experienced counsel who has evaluated the strength of his case); *Karpik*, 2021 WL 757123, at *6 (lead plaintiff's support weighs in favor of court approval).

Courts look to the response of the class for further support for approval of a class settlement. *See Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 244 (6th Cir. 2011). "The lack of objections by class members in relation to the size of the class highlights the fairness of the settlements to unnamed class members and supports approval of the settlements." *In re Se. Milk Antitrust Litig.*, 2013 WL 2155379, at *6 (E.D. Tenn. May 17, 2023). Class members' acquiescence is especially meaningful when, as it does here, the class consists of particularly significant members, such as institutional investors with large stakes in securities cases. *Gutierrez v. Amplify Energy Corp.*, 2023 WL 3071198, at *4 (C.D. Cal. Apr.24, 2023) (quoting 4 Newberg and Rubenstein

11

on Class Actions § 13:58 (6th ed.)). The Court recognizes that the absence of objections and requests for exclusion from the Settlement supports a finding that it is fair, reasonable, and adequate, further supporting approval.

Courts have "long recognized that meritorious private actions to enforce antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought" by the government. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 313 (2007). "Likewise, there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (internal quotation marks and citation omitted). Settlement of this private securities action "serves the public interest by providing an efficient, yet substantial, recovery to a large class of shareholders." *N.Y. State Teachers*, 315 F.R.D. at 241-42. Thus, the public interest factor weighs strongly in favor of approval as well.

## V. Final Class Certification

"Any class certification must satisfy Rule 23(a)'s requirement of numerosity, commonality, typicality, and adequate representation." *Clemons v. Norton Healthcare Inc. Retirement Plan*, 890 F.3d 254, 278 (6th Cir. 2018). "Further, a class action must fit under at least one of the

12

categories identified in Rule 23(b)." *Id.* "The district court must conduct 'a rigorous analysis' as to all the requirements of Rule 23." *Id.* at 278-79 (quoting *Pipefitters Local 636 Insurance Fund v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 630 (6th Cir. 2011)).

That "rigorous analysis" was performed when the Court conditionally certified the settlement class. *See* ECF No. 59. The evidence presented by the plaintiffs in their motion for final settlement approval fortifies the previous findings.  First, cases involving nationally traded securities, such as Home Point's common stock here, satisfy the numerosity factor for class certification. *See Wilkof v. Caraco Pharmaceutical Laboratories, Ltd.*, 280 F.R.D. 332, 338 (E.D. Mich. 2012) (citing *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1039 (5th Cir. 1981)).

Second, commonality exists where Class members all purchased Home Point common stock subject to the same alleged misrepresentations and omissions. *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 443 (S.D. Ohio 2009) (collecting cases).

Third, the typicality factor requires the representative parties' claim to be aligned with those of the represented class such that the lead plaintiff advances the claims of the class members by pursuing his own claims. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996). The claim of the class representative in a securities class action alleging misrepresentation

and omissions in relied-upon documents is considered typical for the class for the entire period from the date of the first misleading document to the date of the full disclosure. *See Ross*, 257 F.R.D. at 445. Lead plaintiff here satisfies the typicality factor because he relied upon the alleged misrepresentations and omissions in the Offering Documents, as did every other member of the Class.

Fourth, the lead plaintiff is adequately positioned to represent the class, and their interests sufficiently are aligned. No conflict exists between lead plaintiff and the other Class members, and the lead plaintiff has been actively involved in the case with regular contact with lead counsel. *See In re Am. Med. Sys.*, 75 F.3d at 1083.

To satisfy the Rule 23(b) requirement, lead plaintiff relies upon subsection (3): predominance of common questions of fact or law and superiority of the class action device as the method of adjudication. Fed. R. Civ. P. 23(b)(3). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," and is "readily met" in securities class actions. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623, 625 (1997). Courts have routinely held that common issues predominate in cases like this one brought under Section 11 of the Securities Act. *See, e.g.*, *Schuh v. HCA Holdings, Inc.*, 2014 WL 4716231, at *7-9 (M.D. Tenn. Sept. 22, 2014). Additionally, the class action

mechanism is the superior method of resolving settlement class members' claims efficiently, in one suit and one forum, rather than in separate suits. *Amchem*, 521 U.S. at 615. This action meets the requirements of Rule 23(b)(3).

Accordingly, the Court will certify the settlement class unconditionally.

## VI. Award of Attorneys' Fees and Costs and Lead Plaintiff Reimbursement

Class counsel move the Court to award 30% of the Settlement Fund for attorneys' fees and reimbursement of $30,766.91 in litigation expenses. "'When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved.'" *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016) (quoting *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)). "These two measures of the fairness of an attorney's award — work done and results achieved — can be in tension with each other." *Id.* "The lodestar method of calculating fees better accounts for the amount of work done, whereas the percentage of the fund method more accurately reflects the results achieved." *Id.* (citations and quotations omitted in this and following citations except as otherwise noted). "To determine the lodestar figure, the court multiplies the number of hours 'reasonably expended' on the litigation by a reasonable hourly rate." *Id.* "In

contrast, to employ the percentage of the fund method, the court determines

a percentage of the settlement to award to class counsel." *Id.*

"As the two methods measure the fairness of the fee with respect to

different desired outcomes, it is necessary that district courts be permitted to

select the more appropriate method for calculating attorney's fees in light of

the unique characteristics of class actions in general, and of the unique

circumstances of the actual cases before them." *Id.* The Court also may

elect to "employ[] the lodestar method to determine the fairness of the fee,

then . . . cross-check it with the percentage-of-the-fund calculation." *Id.* at

280; *see also In re Flint Water Cases*, 63 F.4th 486, 499 (6th Cir. 2023)

(courts may but are not required to cross-check percentage based fee

against a lodestar-based fee).  Regardless of the method chosen, the

Court's decision must include "a clear statement of the reasoning used in

adopting a particular methodology and the factors considered in arriving at

the fee in order to allow effective appellate review for abuse of discretion."

*Id.* at 279.

The Court finds that the percentage of the fund method is

appropriate here for evaluating the reasonableness of the attorneys' fee

because the result achieved for the Class was substantial and the

Settlement, which comprises 10-40% of estimated recoverable damages,

represented a premium over the 7.5% median recovery for Securities Act

class actions for the past decade. ECF No. 62, PageID.2275-76. Class counsel undertook the representation on a contingent fee basis and advanced significant time and expenses to litigate the case—conducting extensive pre-litigation investigation, drafting and filing a detailed, 102-paragraph complaint, successfully opposing defendants' motion to dismiss in significant part, filing and briefing the class certification motion, conducting targeted document discovery, including the review of thousands of pages of documents produced by defendants, Home Point's auditor, and a lead underwriter for the IPO, and finally preparing for and participating in a mediation that ultimately resulted in the Settlement. *See* ECF No. 64.

Lead counsel undertook representation of the class on contingent fee basis, investing over 1,800 hours of time and $30,766.91 in expenses at the risk of no recovery, which would result in zero fees and no reimbursement of costs. *Id*. The significant risk inherent in prosecuting this action warrants the award of the requested 30% contingent fee. *See Rawlings*, 9 F.3d at 516 (when awarding fees to class counsel, courts must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved).

17

The Private Securities Litigation Reform Act (the "PSLRA")[2] particularly endorses contingent attorney fees as a percentage of the fund. *See* 15 U.S.C. § 77z-1(a)(6); *N.Y. State Teachers*, 315 F.R.D. at 243 (concluding attorney fee based on percentage of the fund was appropriate because "PSLRA refers to an award of attorneys' fees and expenses in relation to a reasonable percentage of the amount of any damages actually paid to the class" (cleaned up)). Moreover, as previously discussed, the 30% requested fee is consistent with common fund cases in this District and the Sixth Circuit. *See, e.g., Palm Tran*, 2022 WL 17582004, at *5; *Palazzolo*, 2019 WL 2957143, at *1 (awarding 30% of settlement fund as attorney fees in securities cases).

The requested percentage fee cross-checked against the lodestar valuation of services—calculated by lead counsel as roughly $1.2 million—yields a lodestar multiplier of 1.2, which is less than the typical one in a large PSLRA securities class action. "Most courts agree that the typical lodestar multiplier in a large post-PSLRA securities class action[] ranges from 1.3 to 4.5." *In re Cardinal Health Sec. Litig.*, 528 F. Supp. 2d

---

[2] Section 101(a) of the PSLRA added a new Section 27 to the Securities Act, 15 U.S.C. § 77z-1(a), and thus applies to this issue.

752, 767 (S.D. Ohio 2007); *see also In re Regions Morgan Keegan Sec.*, 2013 WL 12110279, at *7 (W.D. Tenn. Aug. 6, 2013) (finding lodestar cross-check multiplier of 3.1 reasonable). Thus, a lodestar cross-check confirms the reasonableness of the requested 30% of Settlement Fund as the attorney fee.

Likewise, lead plaintiff's requested award of $15,337.00 for his time and expenses is a reasonable reimbursement under the statute. The PSLRA provides an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of [a] class." 15 U.S.C. § 77z-1)(a)(4). Lead plaintiff took an active role in the litigation, reviewing pleadings and briefs, discussing litigation strategy and case development with lead counsel, collecting documents for production, traveling to the United States to be deposed, participating in settlement negotiations, and approving the Settlement. ECF No. 63, PageID.2303-05. Lead plaintiff, a financial professional, devoted substantial time to this matter on behalf of the Class. Courts in this District and throughout the Sixth Circuit have found reasonable and approved similar awards to that requested by lead plaintiff here to compensate them for time and effort

19

spent on behalf of a class. *See, e.g., Zimmerman v. Diplomat Pharm., Inc.,*
2019 WL 3942483, at *2 (E.D. Mich. Aug. 20, 2019) (awarding $13,657.51
to lead plaintiff); *Cosby v. KPMG LLP*, 2022 WL 4129703, at *3 (E.D.
Tenn. July 12, 2022) (granting awards of $25,000, $10,000 and $10,000 to
lead plaintiffs); *Grae v. Corrections Corp. of Am.*, 2021 WL 5234966, at *1
(M.D. Tenn. Nov. 8, 2021) (awarding $17,525 to lead plaintiff). The
requested $15,000 to reimburse lead plaintiff for his time and effort and
$337 to reimburse him for expenses associated with obtaining an
expedited visa to travel to the United States for his deposition are
reasonable.

## VII. Conclusion

For the reasons stated, the Court finds the Settlement and Plan of
Allocation to be fair, adequate, and reasonable to the class and therefore
approves the Settlement and Plan of Allocation. The Court certifies the
class, and it also finds that lead counsel and lead plaintiff are entitled to
awards reimbursing them for attorneys' fees, costs, and expenses incurred
in litigating this action on behalf of the class and that the awards sought
are reasonable.

Accordingly, it is **ORDERED** that plaintiffs' motion for final approval of the class action settlement, approval of plan of allocation, and final class certification (ECF No.61) is **GRANTED**.

It is further **ORDERED** that the Settlement and Plan of Allocation is **APPROVED**.

It is further **ORDERED** that class counsel's motion for attorney's fees and expenses and statutory award to lead plaintiff (ECF No. 62) is **GRANTED**.

It is further **ORDERED** that this action is **DISMISSED WITH PREJUDICE**; provided, however, that this Court retains jurisdiction over all matters relating to the administration of the Settlement, including allocation and distribution of the Settlement Fund.

It is further **ORDERED** that lead class counsel and the settlement administrator Giraldi & Co. LLC shall remain responsible for completion of the administration of the claims and distribution of the Settlement Funds, but they may not invade the Settlement Fund for reimbursement or payment of fees beyond that which is ordered here absent further order of the Court.

s/Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge

Dated: June 28, 2024